**Betty Lou HABER,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, et al.,
Respondents-Appellees.**

No. 84–3271.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1985.

Richard G. Pippinger, Tampa, Fla., for petitioner-appellant.

Theda J. Davis, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.

Before VANCE and ANDERSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

HENLEY, Senior Circuit Judge:

Betty Lou Haber appeals from the district court's denial of her petition for a writ

---

* Honorable J. Smith Henley, U.S. Circuit Judge     for the Eighth Circuit, sitting by designation.

of habeas corpus. Haber contends that she is entitled to habeas relief because the state trial court unconstitutionally limited the cross-examination of a key government witness. She also alleges she was denied a fair trial through the giving of an erroneous jury instruction and by the state's failure to disclose a grant of immunity allegedly given a government witness. Since Haber's claim with respect to the alleged immunity grant may have merit, we remand for further proceedings consistent with this opinion.

After a jury trial in Florida state court Haber was found guilty of first degree murder and was sentenced to life imprisonment. The state's theory at trial was that Haber hired her son by a previous marriage, Arnold McEver,[1] and a man named James Brandt to kill her husband, Albert Haber.

Brandt testified pursuant to a plea agreement with the state and admitted that he killed Albert Haber.[2] He testified that he, McEver and Betty Lou Haber had several meetings at the Haber residence in January of 1975 in which they planned the murder. At first the plan was to kill Albert Haber while he was away on a business trip. However, this plan was eventually replaced by another scheme whereby Brandt and McEver would fake a burglary at the Haber home and kill Mr. Haber when he returned home late from work.

According to Brandt, the fake burglary plan was made final at a meeting with McEver and Mrs. Haber on January 24, 1975. Brandt stated that Mrs. Haber showed him where the valuables were kept and also showed him where Mr. Haber kept a gun. Mrs. Haber was to leave the sliding glass door in the bedroom unlocked. She told Brandt that she would be away at a

slumber party that evening and that her husband would be coming home at about 10:00 p.m.

That night Brandt and McEver went to the Haber residence, entered through the glass door, and went about the house faking the burglary. When Mr. Haber came home at a little after 10:00 p.m., Brandt beat him with a rifle butt and fractured his skull. Later, in order to make sure he was dead, Brandt shot Mr. Haber in the mouth with a small caliber revolver.

Brandt's testimony was the only evidence to directly implicate Mrs. Haber in the murder. Most of the rest of the state's presentation consisted of evidence corroborating Brandt's testimony.[3]

The theory of defense at trial was that Brandt was actually burglarizing the Haber residence when Albert Haber came home unexpectedly. Brandt then killed him to cover up his role in the burglary. To buttress this theory, and to show that Brandt was a professional burglar, defense counsel sought to elicit testimony from Brandt concerning prior burglaries that he had committed. The trial court sustained the prosecutor's objection to this line of cross-examination ruling that Brandt could not be impeached with reference to specific acts of misconduct not resulting in conviction.

Haber's conviction was affirmed. *McEver v. State*, 352 So.2d 1213 (Fla. 2nd DCA 1977). The Florida Supreme Court denied certiorari and her state post-conviction requests for relief were denied. *See Haber v. State*, 380 So.2d 588 (Fla. 2nd DCA 1980); *Haber v. State*, 396 So.2d 707 (Fla. 1981). Haber then filed the present habeas petition. It is undisputed that Haber has

---

1. McEver was tried jointly with Haber. He also was found guilty of first degree murder and sentenced to life imprisonment.

2. Brandt pleaded guilty to first degree murder and was sentenced to life imprisonment pursuant to that agreement.

3. For instance, the Habers' maid testified that she saw McEver and Brandt visit Mrs. Haber

several times at the Haber residence just prior to the murder. In addition, Danny Hardman, a friend of McEver's, testified that Betty Lou Haber and McEver had conversations in which Mrs. Haber expressed dissatisfaction with both her marriage and Mr. Haber's current will. Hardman stated that Mrs. Haber told him that she wanted Albert Haber disposed of and asked McEver to help her.

exhausted all of her state remedies with regard to the issues before this court.

Haber contends that her right to confront her accusers under the sixth amendment was violated when she was not allowed to cross-examine Brandt concerning his prior burglaries. She argues that the right of confrontation includes the right to fully cross-examine adverse witnesses, *see Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and that evidence of Brandt's prior crimes was relevant to support her theory of defense.

The state argues that because Haber did not present this claim in constitutional terms to the state courts, she is barred from pursuing it in federal court unless she can show "cause" and "prejudice" for this failure. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[4] The state also urges that a trial judge has the discretion to limit cross-examination in terms of relevancy and may restrict it to matters raised on direct examination. It contends that the trial court's ruling prohibiting inquiry into specific acts of misconduct was permissible and proper under both Florida and federal evidentiary law.[5]

◼ We find it unnecessary to decide whether *Wainwright v. Sykes, supra*, bars Haber's claim or whether the state trial court committed evidentiary error in restricting Brandt's cross-examination. For even assuming it was evidentiary error reviewable by this court, in the context in which Haber sought to elicit this evidence,

it is clear that any error was harmless beyond a reasonable doubt.

In spite of the trial court's ruling, Haber's counsel made repeated references to Brandt's arrest record and prior experience as a burglar throughout the course of the trial. From beginning to end, defense counsel referred to Brandt as a "B & E" (breaking and entering) man or "professional B & E" man. Counsel also asked questions of several witnesses concerning Brandt's previous burglaries. It is apparent, therefore, that the jury was made aware of Brandt's prior acts of misconduct and his status as a professional burglar.

To the extent that Haber asserts a violation of state evidentiary rules, the above discussion makes clear that any such error did not result in a denial of fundamental fairness. In other words, any mistake in restricting Brandt's cross-examination was not "material in the sense of a crucial, critical, highly significant factor." *Dickson v. Wainwright*, 683 F.2d 348, 350 (11th Cir.1982) (quoting *Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977)).

◼ Nor do we believe Haber's right of confrontation was abridged to such an extent as to require reversal. To be sure, the right of cross-examination is a critical aspect of the right of confrontation. *Davis v. Alaska, supra; Greene v. Wainwright*, 634 F.2d 272 (5th Cir.1981). Full cross-examination is especially important where, as is the case here, the witness to be cross-examined is the state's chief or "star" witness. *Greene*, 634 F.2d at 275. Nevertheless, the right is not absolute. "The infor-

---

**4.** Haber argues that she did present her claim to the state courts on direct appeal in terms of constitutional requirements, that the state did not argue waiver on the direct appeal, and that since the Florida Court of Appeals did not indicate that this claim was waived due to procedural default, we must presume that the state court reached the merits. *See, e.g., Raper v. Mintzes*, 706 F.2d 161, 163–64 (6th Cir.1983) (where basis for state court's decision is unclear, and where state's brief on state appeal does not raise issue of procedural default, *Wainwright v. Sykes* does not bar federal review). In light of our resolution of Haber's confrontation claims, we need not determine the merits of these arguments.

**5.** There has been argument that, in addition to basing its ruling on the prohibition against inquiries into a witness's specific acts of misconduct not resulting in conviction, the trial court alternatively ruled that Brandt could invoke the fifth amendment to prevent Haber from asking about his prior burglaries. We agree with the district court, however, that the trial judge refused to allow the line of questioning because it was improper impeachment and not because of any fifth amendment concerns.

mation sought to be elicited must be relevant. Once cross-examination has been permitted to an extent sufficient to satisfy the defendant's Sixth Amendment rights, the trial judge's discretionary authority comes into play." *United States v. Kopituk,* 690 F.2d 1289, 1337 (11th Cir.1982) (citations omitted), *cert. denied,* — U.S. ——, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983).

Unlike the situations in *Davis, supra,* and *Greene, supra,* Haber was not attempting to inquire into Brandt's possible bias or motive for giving favorable *testimony* for the state in the case. Rather, at the time of trial, Haber's sole stated purpose of inquiring into Brandt's prior burglaries was to establish his motive for committing the Haber *burglary* and ultimately the Haber *murder.* As stated, this purpose was accomplished despite the trial court's restriction as the jury was aware of Brandt's prior criminal history.

However, another aspect of Haber's argument is more troublesome. She contends that Brandt was given immunity for his prior criminal acts in exchange for his testimony and says that the state did not disclose this fact to the defense. She points to an affidavit of Richard Edwards, who was Brandt's attorney at the time of trial, which states that the state "advised" Brandt that he would not be prosecuted for any of his prior crimes in exchange for his testimony at Haber's trial. Haber asserts that the state's failure to disclose this aspect of the plea agreement deprived her of due process.

█ If this is true, it may be that Haber is entitled to a new trial. Where the government fails to disclose evidence of any understanding or agreement as to future prosecution of a key government witness, due process may require reversal of the conviction. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Smith v.*

*Kemp,* 715 F.2d 1459, 1463 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983); *Williams v. Brown,* 609 F.2d 216, 221 (5th Cir.1980). The government has a duty to disclose such understandings for they directly affect the credibility of the witness. This duty of disclosure is even more important where the witness provides the key testimony against the accused. *See Giglio,* 405 U.S. at 154–55, 92 S.Ct. at 766.

█ Here, it cannot be denied that Brandt provided the essential link between Mrs. Haber and the murder. Therefore, if such an understanding actually existed between Brandt and the state concerning his prior crimes, this evidence would appear to be material and might well have affected the outcome of the trial. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Irwin,* 661 F.2d 1063, 1068 (5th Cir.1981) (duty of disclosure applies even where evidence relates only to credibility of key government witness), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982). Moreover, if there was such an agreement, Haber's counsel would have been allowed to impeach Brandt concerning the alleged agreement for it would directly bear on Brandt's motive or bias in testifying for the state. *See Davis, supra.*[6]

The state contends that no immunity was promised Brandt, however, and that mere "advice" by an attorney for the government does not amount to a grant of immunity. It points out that the trial court held a post-trial hearing on the matter after Edward's affidavit was submitted, and determined that no such immunity existed. The state argues that such a finding is presumed correct under *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

---

**6.** Brandt was cross-examined with regard to the disclosed plea agreement whereby he received life imprisonment instead of facing the possibil-

ity of the death penalty. However, he was not cross-examined to any extent with regard to the alleged agreement concerning his prior crimes.

We believe that a remand is in order to allow Haber to be given an opportunity to elicit further evidence regarding the state's "advice" to Brandt. In the first place, even though the state court's finding of no immunity be presumed correct, this is not an irrebuttable presumption and Haber may be able to prove by convincing evidence that a promise of immunity actually existed. *Smith v. Kemp*, 715 F.2d at 1465. More importantly, *Giglio* did not speak in terms of the state's duty to disclose only bona fide enforceable grants of immunity. Its reach extends to "*any* understanding[s] or agreement[s]." *Giglio*, 405 U.S. at 155, 92 S.Ct. at 766 (emphasis added); *Williams*, 609 F.2d at 221 (duty to disclose extends to "any promises, agreements, and understandings"). *Cf. McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985).[7] While the district court stated that there was no convincing evidence presented which proved that there was a promise of immunity, it did not make any findings as to whether the "advice" was actually given by the prosecutor and whether the "advice," if in fact it was given, constituted an understanding or informal agreement between Brandt and the state. Even mere "advice" by a prosecutor concerning the future prosecution of a key government witness may fall into the category of discoverable evidence since it could constitute an informal understanding which could directly affect the witness's credibility before the jury.[8]

Therefore, in view of the importance of Brandt's testimony to the case against Haber and in light of the fact that the record is unclear as to the extent and scope of any alleged understanding between Brandt and the state concerning his prior crimes, we remand for further proceedings consistent with this opinion. Haber should be allowed to present evidence and witnesses to establish her due process claim. The district court should make findings as to whether such "advice" was actually given and whether it amounted to a grant of immunity or otherwise constituted an agreement or understanding between Brandt and the state. The court should also determine whether the state failed to disclose any such understanding and whether this failure violated Haber's right to a fair trial.[9]

REVERSED and REMANDED.

---

7. We believe *McCleskey* is distinguishable. In that case, a detective had promised that he would "speak a word" for the witness concerning a pending escape charge if he testified against McCleskey. This circuit, *en banc*, held that the "detective's statement offered such a marginal benefit ... that it is doubtful it would motivate a reluctant witness, or that disclosure of the statement would have had any effect on his credibility." *McCleskey, supra*, at 884. Here, there arguably was an understanding that Brandt would not be prosecuted for a number of prior crimes (possibly as many as two hundred burglaries). If Haber's allegations are true, this is far more than a mere promise by a detective to "speak a word" for a witness facing a lone escape charge. We are of the opinion that disclosure of such an understanding, if it in fact existed, would directly affect Brandt's credibility and, thus, unlike the situation in *McCleskey*, the state's alleged nondisclosure of the "advice" may have violated Haber's due process rights. Moreover, in view of the key nature of

Brandt's testimony, we are unable to say on this record that any such nondisclosure was harmless error. *Compare McCleskey, supra*, at 885.

8. *See Campbell v. Reed*, 594 F.2d 4, 7–8 (4th Cir.1979). "[A] tentative promise of leniency might be interpreted by a witness as contingent upon the nature of his testimony. Thus, there would be a greater incentive for the witness to try to make his testimony pleasing to the prosecutor." *Id.*

9. Haber's argument concerning the giving of a felony-murder instruction at her trial is without merit. Although the instruction was erroneously given, we agree with both the state appellate court and the district court that the error was harmless beyond a reasonable doubt. It affirmatively appears from the record that the jury undoubtedly based its verdict on a premeditation theory and not any improper felony-murder theory.