## 44403. HARRIS v. THE STATE.
(362 SE2d 211)

SMITH, Justice.

The appellant, Tommy Joe Harris, was indicted and convicted of burglary, aggravated assault, and rape. On appeal, the appellant only attacks the constitutionality of the Rape Shield Statute, OCGA § 24-2-3. We affirm.

In the early morning of December 28, 1986, while asleep in bed with her two-year-old daughter, the victim was awakened by the appellant. Harris was carrying a large knife which he used to threaten the victim's life and the life of her child if she did not "make love to him." Harris had intercourse with the victim, and her finger was cut during the incident. Traces of her blood were found on the appellant's clothing after he was apprehended. Awakened by the noises, Shannon Ingle, the victim's niece, left the house and went to a next door neighbor for help. The appellant was later apprehended in the neighborhood. Harris stipulated that he had engaged in intercourse with the victim, but he insisted it was with her consent. Harris contended that she was a prostitute, and he was at her home to negotiate a price for sex. The appellant sought to introduce evidence of her prior sexual behavior to show she was a prostitute. At the pretrial hearing, the appellant's counsel made a motion *in limine* asking the court to find the evidence relating to the victim's prior sexual history inadmissible[1] and then to strike the Rape Shield Statute as unconstitutional. Counsel contended the statute would keep critical evidence away from the jury in violation of the appellant's Sixth Amendment right to be confronted by witnesses and cross-examine them. The trial judge refused to allow the evidence of the victim's prior sexual history to be admitted and declined to find the statute unconstitutional. The appellant's counsel renewed the motion at trial and it was again denied.

1. In *Hines v. State*, 249 Ga. 257, 259 (290 SE2d 911) (1982), this Court recognized that the Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to cross-examine the witnesses against him. Yet, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U. S. 284, 295 (93 SC 1038, 35 LE2d 297) (1973). In *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974), the Supreme Court applied a balancing test which weighs the state's interest in its evidentiary rule

---

[1] As a clever trial tactic, defense counsel requested the trial judge to find the allegations of prostitution inadmissible thus attempting to create a conflict with the Rape Shield Statute. This tactic preserved the constitutional issue for appeal. There was never any evidence offered to prove the allegations regarding the allegation of prostitution.

against the rights of the criminal defendant.[2] Taken together, *Davis*, supra, and *Chambers*, supra, hold that an evidentiary rule that amounts to a "denial or significant diminution [of the right of confrontation] calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined." *Chambers v. Mississippi*, supra at 295.

a. An important state interest that the right of confrontation must accommodate is an interest that furthers the truth-finding process. *Davis v. Alaska*, supra at 316; and *Bobo v. State*, 256 Ga., supra at 360. The Georgia Rape Shield Statute, OCGA § 24-2-3, furthers the truth-seeking process. It encourages victims of rape to come forward with the truth. "[R]ape shield laws are intended generally to protect the complaining witness, thereby encouraging the reporting and prosecution of rapes[.]" *Johnson v. State*, 146 Ga. App. 277, 280 (246 SE2d 363) (1978).

OCGA § 24-2-3 assists the truth-seeking process by preventing the jury from becoming inflamed or impassioned and deciding the case on irrelevant and prejudicial evidence. The statute "is a strong legislative attempt to protect the victim-prosecutrix in rape cases by the exclusion of evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused." *Parks v. State*, 147 Ga. App. 617 (249 SE2d 672) (1978).

b. There is also the compelling interest of the state to protect its citizens from criminal acts and to encourage the victims to bring the perpetrators of the crimes to justice. "There is no other crime we can think of in which *all of the victims are denied protection* simply because someone might fabricate a charge[,]" *Warren v. State*, 255 Ga. 151, 156 (336 SE2d 221) (1985) (emphasis in original), or because of the victim's prior conduct with others. See Note *"Can Georgia's Rape Shield Statute Withstand a Constitutional Challenge?"* 36 Mercer L. Rev. 991 (1985).

"Rape 'is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim . . . . Short of homicide, it is the "ultimate violation of self." ' [Cit.]" *Warren v. State*, supra at 155. Women who have already been victimized do not wish to be placed in the position of having their past "self" exposed when it serves no purpose but to "chill" the reporting of a crime.[3]

---

[2] This same balancing test has been applied in Georgia cases which have involved evidentiary rules and the right of confrontation. *Bobo v. State*, 256 Ga. 357 (349 SE2d 690) (1986); *Hines v. State*, supra at 259.

[3] "Rape is probably one of the most under-reported crimes . . . [f]ifty to eighty percent of such crimes may never enter statistical rolls because victims, for reasons ranging from fear

Contrary to the position of the appellant, if a victim is a prostitute, then it does not mean she cannot be raped nor does it mean she consents to sexual acts with everyone. No woman wishes to expose her private life to unnecessary public probing. The state has a legitimate interest in protecting witnesses from harassment and intimidation. Thorough cross-examination is a principal means of ascertaining the truth, but a witness has a "right . . . to be examined only as to relevant matter and to be protected from improper questions and from harsh or insulting demeanor." OCGA § 24-9-62.

c. The statute also provides protection for the defendant. The *in camera* hearing, provided for in the statute, is an important safeguard as it provides the least drastic infringement on the defendant's rights when there is relevant evidence applicable to a truth-seeking exception. Certainly, the state's interests set out above together with the safeguards set out in the statute balances the scales in favor of such a state interest and thereby does not infringe upon the appellant's Sixth Amendment rights. The defendant's right to confront and cross-examine witnesses concerning the victim's past sexual behavior with others must bow to accommodate the state's interest in the Rape Shield Statute.

2. The appellant contends motive and fabrication are not covered as exceptions in the statute. A rape victim can only have the motive to fabricate a rape charge if the original sexual act was consensual. If the original act was non-consensual, then the allegation of rape is not a fabrication. It is clear if one attempts to show fabrication, then one must also show consent. Looking at the statute, consent is one of the exceptions. OCGA § 24-2-3 (b). Thus, we need not look beyond the impact of the statute on evidence excepted by the statute.

Because there was an allegation of consent, an *in camera* hearing would have been appropriate. However, the defendant waived his right to an *in camera* hearing and admitted his allegations of prostitution were inadmissible. We find the statute constitutional.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 24, 1987 —
RECONSIDERATION DENIED DECEMBER 16, 1987.

---

of reprisal to belief that nothing will ever be done, fail to make official complaints. Estimates of the actual incidence of rape, however, range from three and one half to twenty times the reported figure." Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum. L. Rev. 1, 5 (1977). A more recent survey states, "[w]hile the number of reports is rising, unfortunately only about one out of four women who have been raped decide to make a police report." Linda E. Lendray, *Recovering From Rape*, at 35 (1986). The statistics vary but the result is that every unreported rape leaves a rapist who is free to rape again.

*Bailey & Bearden, J. Lane Bearden,* for appellant.
*Darrell E. Wilson, District Attorney,* for appellee.
*Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* amicus curiae.