**Russell Lee JONES, Petitioner–Appellant,**

v.

**Truett GOODWIN, Warden, Respondent–Appellee.**

No. 90–8360.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1993.

Beth E. Kirby, Alston and Bird, Lori Cohen, Atlanta, GA, for petitioner-appellant.

Michael J. Bowers, Atty. Gen. of Ga., Susan V. Boleyn, Paula K. Smith, Sr. Asst. Attys. Gen., Atlanta, GA, for respondent-appellee.

TJOFLAT, Chief Judge:

In this habeas corpus proceeding, petitioner Russell Lee Jones challenges his rape conviction on the ground that the state trial court, in applying Georgia's rape shield statute, O.C.G.A. § 24-2-3 (Michie 1982), precluded him both from impeaching the victim and from proving that she consented to the sexual intercourse, thereby violating his rights under the Sixth Amendment's Confrontation Clause as applied to the states through the Fourteenth Amendment, *see Pointer v. Texas,* 380 U.S. 400, 401, 85 S.Ct. 1065, 1066, 13 L.Ed.2d 923 (1965). Jones not only seeks the vacation of his conviction, but also seeks a declaration that the rape shield statute is unconstitutional on its face and as applied in his case. The district court rejected Jones' petition and denied him relief. We affirm.

## I.

The salient facts in this case span a period of four days.[1] During a phone conversation on January 11, 1988, fourteen-year-old Julie Marie Keys told John Goodwin, a friend from school, that she was thinking of running away from home. Keys indicated that she was extremely upset about an ongoing dispute with her parents concerning her boyfriend, Charles Langston. Goodwin put his cousin, Russell Lee Jones, on the phone with Keys. Keys and Jones had a brief social chat and talked about Goodwin.

The next evening, Keys' father whipped her in the course of an argument about Langston. At 11:45 a.m. the following day, January 13, Jones called Keys, asked her if she still intended to run away from home, and offered to help if she did. Keys told Jones that her father had struck her the night before. Jones said that he would be staying in a motel room in town; he also said that he had a prison record but would not hurt her. Jones claimed, but Keys denied, that they discussed Jones' sexually explicit tattoo on his shoulder that read "I eat pussy." According to Jones, he told Keys about the tattoo, she asked him if he really did what the tattoo suggested, he answered that he did "if the girl is clean," and she responded that she was "always clean." At 3:00 p.m. the same day, Jones called Keys and gave her his room number at the Young Harris Motel.

Between 5:15 and 5:30 a.m. the next day, January 14, Keys ran away from home; she climbed out of her bedroom window and walked about half a mile to Jones' motel. Jones let Keys into his room. According to Keys, Jones placed a sharp object against her neck and raped her. According to Jones, Keys initiated and consented to the sexual intercourse.

After the alleged rape, Jones drove Keys to Langston's house where he dropped her off between 8:15 and 8:30 a.m. Keys told Langston that Jones had raped her. While Keys was with Langston, a police officer picked her up for being a runaway and took her to the county jail. At the jail, Keys told her mother that she had been raped. Keys' mother took Keys to a hospital to be examined by a doctor. During the examination, Keys told the examining doctor that she had been a virgin prior to the incident with Jones. Later that day, the police arrested Jones. On February 29, 1988, a grand jury indicted Jones for rape under O.C.G.A. § 16-6-1 (Michie 1982).

The trial took place on May 9 and 10, 1988. Keys was the state's principal witness.[2] On direct examination, Keys neither stated nor intimated that she was a virgin prior to her encounter with Jones. After Keys concluded her direct testimony, Jones' counsel, Mikele Carter, requested an

---

1. Unless otherwise indicated, the facts laid out in the text are undisputed.

2. The state also presented the state crime lab report and the testimony of Keys' mother, to corroborate Keys' testimony about the family dispute that prompted her to run away; the testimony of the arresting officer, to whom Jones made the statement that he had not been with Keys the day of the rape; and the testimony of a special agent of the Georgia Bureau of Investigation, to whom Jones admitted that the victim had been in his motel room, but denied that they had had sexual intercourse.

*in camera* rape shield statute hearing, *see* O.C.G.A. § 24-2-3(c), to obtain a ruling on some evidence that she intended to introduce during the defense's case in chief. Counsel stated that she wanted to introduce (1) the doctor's testimony that Keys told him that she was a virgin prior to the rape, (2) the testimony of three boys for the proposition that each had had sexual intercourse with Keys prior to January 14, 1988, and (3) the doctor's testimony (presumably to corroborate the boys' testimony) that Keys' hymen was not intact prior to the rape. Counsel argued that the boys' testimony would impeach Keys' statement to the doctor that she was a virgin. We set out below the relevant portions of the colloquy between the court and Jones' attorney regarding her proffer.[3]

> Carter: Number one, it's my understanding that on the basis of three witnesses that I have here that Julie Keys has had sex with three other people, other than Russell Jones. She told the doctor, the doctor, when he examined her that she was a virgin. For impeachment purposes, I would like to show that that statement is improper.
>
> Court: Well, that statement is not in evidence yet.
>
> Carter: But it will be. I understand that the doctor is going to testify.

Respondent's Ex. 1, at 79. Neither the state nor Jones called the doctor to the stand, so Carter's assertion proved incorrect.

Carter then explained how the proffered evidence—the three boys' testimony impeaching Keys' virginity statement to the doctor—would be relevant.

> Carter: [The relevance of the evidence] would be the general reputation for promiscuity, non-chastity or sexual mores contrary to the community's standards ..., and evidence of past sexual behavior ..., and there is an issue of consent.

*Id.* Jones apparently believed that the proffered evidence of Keys' prior sexual activity was relevant character evidence from which the jury could infer that Keys was inclined to consent, and did consent, to having sexual intercourse with Jones.

The trial court rejected Jones' proffer, excluding the doctor's expected testimony about Keys' virginity statement and the vaginal examination, and the boys' expected testimony about their prior sexual relations with Keys.

> Court: I am going to deny the Defendant's motion under the Rape Shield Act, to put in the testimony of the doctor that she told him that she was a virgin, and I'm going to deny the previous evidence about the previous vaginal examination, and I'm going to deny the Defendant the right to put in testimony of three other persons that they had intercourse with [Keys].

*Id.* at 87.

The court granted, however, counsel's request with respect to a fourth piece of proffered evidence; the jury could hear what Jones and Keys allegedly had said to each other over the telephone about Jones' sexually explicit tattoo.

After the hearing concluded, Carter cross-examined Keys and asked her about her telephone conversation with Jones. Keys denied having discussed Jones' tattoo; she claimed that she knew nothing of the tattoo until she was in Jones' motel room. Carter asked Keys absolutely nothing about her sexual history.

After the state rested, Jones took the stand in his own defense and denied raping Keys. According to Jones, Keys initiated and consented to having sexual intercourse. Carter also introduced Jones' version of the tattoo conversation. She did not, however, ask the court to revisit its ruling precluding the proffered testimony of the doctor and the three boys.

The jury found Jones guilty of rape, and the trial court sentenced him to life imprisonment. The Georgia court of appeals affirmed Jones' conviction and sentence,

---

**3.** Technically, Jones' counsel did not proffer the testimony of either the doctor or the three boys. Rather, she made a speaking proffer describing what the testimony would be. For purposes of discussion, we will assume that counsel properly proffered the testimony at issue.

*Jones v. State,* 190 Ga.App. 416, 379 S.E.2d 189 (1989), and denied Jones' motion for rehearing.[4]

On July 7, 1989, Jones filed a petition for habeas corpus relief in federal district court pursuant to 28 U.S.C. § 2254 (1988), claiming that the exclusion of the proffered testimony of the doctor and the three boys denied him his constitutional right of confrontation. He also claimed that Georgia's rape shield statute was unconstitutional facially and as applied in his case because it denied him, and defendants similarly situated, rights guaranteed under the Confrontation Clause and by the Fourteenth Amendment's Equal Protection Clause. Finally, Jones claimed (although not on any specified constitutional grounds) that the trial court erred when it admitted into evidence a pocket knife that was similar to the one found in his possession when he was arrested.[5]

The magistrate judge to whom the case was assigned recommended, in his report, that the district court dismiss the habeas petition as meritless. On February 13, 1990, the district court adopted the magistrate's report and recommendation, and denied Jones' petition. Jones appeals.

## II.

■■■ Only two of Jones' claims merit any discussion: (1) his claim that the trial court, in excluding the proffered evidence, contravened his constitutional right of confrontation, and (2) his claim that Georgia's rape shield statute is invalid facially and as applied because it denies him and other similarly situated defendants the right to confront their accusers.[6] We review the district court's denial of Jones' habeas petition *de novo, see Nichols v. Butler,* 917 F.2d 518, 520 (11th Cir.1990), and reject Jones' first claim in part II.A. of this opinion and reject his second claim in part II.B.

4. Georgia's Superior Court's Sentence Review Panel subsequently reduced Jones' sentence to twenty years.

5. None of Jones' constitutional claims have been passed on by the Georgia courts. At trial, Jones' attorney made no mention of the United States Constitution in arguing for the admissibility of his proffered evidence or against the admissibility of the pocket knife. Similarly, counsel made no reference to either the Constitution or constitutional jurisprudence in Jones' brief to the Georgia court of appeals. The errors cited in that brief were merely errors of state law:

    1. The trial court erred in ruling that Georgia's "Rape Shield Statute" precluded Appellant from impeaching KEYS' [virginity] statement [to the doctor], since the door was opened by allowing in some "Rape Shield" evidence.

    2. It was error to allow in evidence a borrowed knife when KEYS did not identify or even know what kind of instrument was utilized.

    3. The court erred in not granting a new trial because of poor courtroom acoustics.

    4. The court erred in denying the Appellant's Motion for New Trial upon grounds as given in the motion.

Respondent's Ex. 5. Further, the Georgia court of appeals' opinion affirming Jones' conviction contains no reference to the Constitution of the United States. *See Jones,* 190 Ga.App. 416, 379 S.E.2d 189.

"Generally, all habeas corpus claims seeking to overturn a state conviction in federal court

must have been previously raised and exhausted in the state court." *Atkins v. Attorney General of Alabama,* 932 F.2d 1430, 1431 (11th Cir.1991) (citing *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). The state, in litigating this case in the district court and here, however, has said nothing about Jones' failure to present these claims to the Georgia courts. Following the teaching of *Atkins,* we treat the state's silence as "an implied waiver of the exhaustion requirement" of 28 U.S.C. § 2254 (1988). *See id.*

6. Jones' remaining claims are patently meritless. First, Jones claims that the erroneous admission of the knife warrants habeas relief. On direct appeal, the Georgia court of appeals held that the trial court erroneously, but harmlessly, admitted the knife. *Jones,* 379 S.E.2d at 191. Because admission of the knife obviously did not render Jones' trial fundamentally unfair, *see Jameson v. Wainwright,* 719 F.2d 1125, 1126 (11th Cir.1983) (per curiam), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2355, 80 L.Ed.2d 827 (1984), we summarily reject Jones' argument. *See also Estelle v. McGuire,* — U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (Federal habeas relief is not available to correct errors of state law in the admission of evidence.).

    Second, Jones claims that Georgia's rape shield statute violates the Equal Protection Clause of the Fourteenth Amendment by distinguishing between rape defendants and other criminal defendants in the admission of evidence. We consider Jones' contention so preposterous as to merit no discussion.

### A.

■ The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause includes the right to conduct reasonable cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). The right to cross-examine is not, however, absolute. *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046. It remains "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation," *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, "and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046.

■ The scope of the Confrontation Clause is limited. The clause establishes a right to cross-examine and impeach adverse witnesses. The clause emphatically does not confer upon criminal defendants a right to present any and all relevant substantive evidence in their case in chief. The Confrontation Clause plays a discrete (albeit essential) role in criminal trials, but it simply is not coextensive with relevance, as Jones seems to suggest.

Jones claims that the trial court contravened his constitutional right of confrontation by excluding evidence proffered (1) for impeachment and (2) to establish, from circumstantial evidence of Keys' past sexual behavior, that Keys consented to sexual intercourse with Jones. As to the first purpose, Jones sought to impeach Keys' out of court virginity statement to the doctor. In part II.A.1. of this opinion, we explain that because Keys did not testify that she was a virgin prior to the rape, the proffered testimony was simply irrelevant as impeaching evidence. As to the second purpose, Jones sought, through the testimony of third parties, to introduce evidence of Keys' past sexual behavior to show consent. In part II.A.2., we demonstrate, how-

ever, that the evidence was substantive circumstantial evidence offered for the purpose of bolstering Jones' consent defense in his case in chief. Thus, the exclusion of the evidence did not raise a Confrontation Clause issue because it was not offered to impeach Keys' testimony.

### 1.

■ Jones first contends that the trial court violated his Confrontation Clause rights by excluding the boys' and the doctor's proffered testimony proffered for the purpose of impeaching Keys' out of court virginity statement. This contention suffers from one fundamental flaw: the proffered testimony was irrelevant for that purpose because it would have neither contradicted nor impeached anything Keys said while on the witness stand, or, for that matter, anything presented in the state's case. We recently explained that "the Sixth Amendment only protects cross-examination that is *relevant.*" *Wasko v. Singletary*, 966 F.2d 1377, 1381 (11th Cir. 1992); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (trial court retains wide latitude under the Confrontation Clause to limit marginally relevant testimony); *Francis v. Dugger*, 908 F.2d 696, 702 (11th Cir.1990) (same); *Capps v. Collins*, 900 F.2d 58, 60–61 (5th Cir.1990) (there is "no constitutional right to present irrelevant evidence"); *Clark v. Dugger*, 834 F.2d 1561, 1565 & n. 8 (11th Cir.1987) (habeas relief not warranted because excluded cross-examination was irrelevant); *Haber v. Wainwright*, 756 F.2d 1520, 1522–23 (11th Cir.1985) ("The information sought to be elicited must be relevant" (quoting *United States v. Kopituk*, 690 F.2d 1289, 1337 (11th Cir.1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983))). Jones' Confrontation Clause challenge fails because his proffer was not relevant as impeachment evidence.

Jones argues that the trial court should have permitted him to challenge Keys' credibility by impeaching her statement to the doctor that she was a virgin at the time of the rape. Yet, Keys' assertion of her

virginity was only made out of court. The jury simply never learned that Keys had told the doctor that she was a virgin prior to the rape. The record is utterly devoid of any assertion of Keys' virginity that Jones could have sought to impeach or otherwise rebut. The Georgia court of appeals properly rejected Jones' explanation of relevance:

> [Keys] offered no ... testimony [concerning her lack of sexual experience], nor was her purported statement to the doctor to that effect ever brought to the jury's attention. The doctor did not testify and defendant was not deprived of the right of cross-examination, confrontation and impeachment.

*Jones,* 379 S.E.2d at 191.[7] Because the jury received no evidence as to Keys' pre-rape virginity, Jones' desire to impeach Keys' out of court virginity statement is of no constitutional moment; Jones merely sought to establish that Keys previously had told an out of court lie. The trial court correctly excluded Jones' proffered evidence because it would have impeached nothing. *See Wasko,* 966 F.2d at 1381.

### 2.

█ Jones also contends that the proffered evidence was relevant evidence of Keys' character[8] that tended to (1) support his defense of consent and (2) show that he

reasonably believed that Keys consented. We reject both of Jones' contentions.

First, Jones wanted to show that Keys had a propensity for sexual behavior (which Jones apparently believes reflected bad character) and acted in conformity with it by having consensual intercourse with Jones; ergo, no rape occurred. For this purpose, the proffered evidence was substantive circumstantial evidence through which Jones hoped to establish his defense of consent. Indeed, in his Supplementary Brief in Support of Petition for Habeas Corpus Relief, filed with the district court on September 29, 1989, Jones explained that the proffered testimony of the three boys was "substantive evidence" to "establish an inference of consent." Jones' claim here is *not* that he was denied his constitutional right to confront Keys, but that he was denied the right to develop his defense of consent. This is a straightforward Due Process Clause claim[9] that has nothing to do with the Confrontation Clause.

Second, Jones wanted to introduce evidence of Keys' prior sexual behavior to demonstrate the reasonableness of his belief that Keys consented to the sexual intercourse, and thus to show a lack of criminal intent. Yet, Keys' prior sexual behavior could not have influenced Jones' purported belief that Keys consented; Jones simply was unaware of Keys' prior sexual behavior.[10] As the Georgia court of appeals observed,

---

7. Jones' proffer at the rape shield statute hearing did not include asking Keys on cross-examination about her virginity either directly or in the context of her statement to the doctor. This point is important because the court of appeals indicated that "[h]ad the victim in fact represented at trial that she was a virgin prior to her encounter with defendant, evidence of her prior sexual activity would have been admissible for impeachment." *Jones,* 379 S.E.2d at 191.

8. Of course, Georgia's rape shield statute is designed to exclude precisely this kind of evidence. Georgia's Supreme Court has explained that "[t]he statute 'is a strong legislative attempt to protect the victim-prosecutrix in rape cases by the exclusion of evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused.'" *Harris v. State,* 257 Ga. 666, 362 S.E.2d 211, 213 (1987) (quoting *Parks v. State,* 147 Ga.App. 617, 249 S.E.2d 672, 673 (1978)); *cf.* Fed.R.Evid. 404(a) (West 1991)

("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion...."). Character evidence distorts cases by imprudently focusing attention on the minimally probative and collateral issue of character. *See* Fed.R.Evid. 404 advisory committee's note ("Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion." (citation omitted)).

9. We do not consider this potential due process claim because Jones has not presented the issue to us.

10. Georgia's rape shield statute permits the introduction into evidence of a victim's past sexual behavior if such behavior "directly involved the participation of the accused and [the court] finds that the evidence expected to be intro-

[b]ecause there was no evidence concerning sexual behavior by the victim which directly involved participation of defendant, the only basis for permitting evidence of past sexual conduct was that it supported the inference that the accused could have reasonably believed that the conduct of the [victim] was consensual. [Yet, d]efendant had no knowledge of the alleged conduct between the victim and [the] three young men.

*Jones,* 379 S.E.2d at 190–91 (internal citations omitted). Further, prior to enactment of the rape shield statute, the Georgia Supreme Court correctly understood that a woman's consensual sexual activities with certain individuals in no way imply consent to similar activities with others. *Lynn v. State,* 231 Ga. 559, 203 S.E.2d 221, 222 (1974) (" 'consent in the case of one man does not imply consent in the case of another.' " (quoting 3 Underhill's Criminal Evidence § 766, at 1766 (5th ed.))).[11] As before, Jones' claim presents, if anything, a straightforward claim under the Due Process Clause, and in no way implicates the Confrontation Clause.

The bottom line is that none of the proffered evidence was relevant for *impeachment* purposes. Jones simply did not proffer any evidence directly to contradict Keys' testimony, and neither Keys nor anyone else testified that she was a virgin. Even if the proffered prior sexual behavior evidence was relevant—and we emphatically believe that it was not—because it tended to support Jones' defense of consent, it was not offered for any purpose with which the Confrontation Clause is concerned. Hence, the trial court could not possibly have denied Jones' right to confrontation. The Confrontation Clause has never sanctioned what Jones' attorney sought to do. The Confrontation Clause is not coextensive with relevance.

### B.

■ Jones also asserts that Georgia's rape shield statute is "unconstitutional per se." This habeas review is no occasion for considering the facial constitutionality of the rape shield statute; such elective speculation is better left to the law reviews. *See Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). We simply evaluate the constitutional error that the trial court allegedly committed during the course of the criminal prosecution. Indeed, the fundamental question in this habeas corpus proceeding is whether Jones was convicted in violation of his constitutional rights. *See Estelle,* —— U.S. at ——, 112 S.Ct. at 480.

Our humble task is to determine whether the Confrontation Clause mandated the admission of the evidence in question, and, if so, whether its exclusion was harmless beyond a reasonable doubt. In carrying out this task, we do not care *why* the trial judge excluded the evidence—e.g., whether he did so because he flipped a coin, his law clerk gave him bad advice, he had a spiritual vision, or he interpreted the rape shield statute. On habeas review, we are concerned only with determining whether Jones was convicted in violation of his constitutional rights. Our review does not encompass inquiry into the motivations behind the trial court's rulings;[12] we review

---

duced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution." O.C.G.A. § 24–2–3(b).

**11.** In his supplemental brief, Jones also contended that the proffered testimony of the three boys would be relevant to demonstrate that Keys (1) had knowledge of sexual matters exceeding that of the typical virgin, and (2) had a motive for falsely accusing Jones of rape. Neither contention supports a constitutional right to introduce evidence on the otherwise forbidden subject of prior sexual behavior. The record does not even remotely suggest that Keys possessed unusually sophisticated knowledge about sexual matters. Jones' pure speculation that Keys may have had a reason to fabricate the rape charge is similarly unpersuasive.

**12.** We will, however, consider a petitioner's claim that a trial court's ruling was motivated by an intent to discriminate on the basis of race, religion, sex, or national origin. Jones has presented no such claim in this case.

only the constitutional implications of those rulings. Jones sought to introduce the proffered evidence for the purpose of showing (1) that Keys lied about being a virgin prior to the rape, and (2) that Keys' past sexual behavior tended to increase the likelihood that she consented. Neither purpose for the proffer raised a Confrontation Clause question.

### III.

Because Jones has not demonstrated that his conviction violated his constitutional right of confrontation, we affirm the district court's denial of Jones' petition for a writ of habeas corpus.

AFFIRMED.

BIRCH, Circuit Judge, concurring in the result:

I concur in the result in this case.