## A94A2469. GILSTRAP v. THE STATE.
### (450 SE2d 436)

JOHNSON, Judge.

James Edgar Gilstrap was indicted on one charge of rape and three counts of child molestation involving his thirteen-year-old adopted daughter. He was convicted on the molestation counts. He appeals his convictions.

1. The trial court correctly refused to allow an expert retained by Gilstrap to testify regarding results of tests administered to him and render an opinion as to whether Gilstrap's responses fit the profile of a pedophile. This court has repeatedly held that such testimony is not admissible in Georgia. *Lewis v. State*, 212 Ga. App. 310, 311 (2) (441 SE2d 851) (1994); *Smith v. State*, 206 Ga. App. 557, 559 (2) (426 SE2d 23) (1992). "From the extensive testimony and cross-examination of the various witnesses at trial, the jury, without the help of expert opinion, could have determined the credibility and truthfulness of all the witnesses and could have formed independent opinions as to the victims' truthfulness and the appellant's capability of performing the acts he was accused of. These determinations did not involve 'unique and mysterious areas of human response' necessitating expert testimony." *Jennette v. State*, 197 Ga. App. 580, 582-583 (3) (398 SE2d 734) (1990).

2. Gilstrap's second and third enumerations of error focus on trial court rulings regarding an incident during which the victim's grandfa-

ther admitted to squeezing the victim's breasts. This incident occurred several years before the events giving rise to the indictments in this case. Gilstrap first complains that the trial court erred in failing to grant a continuance because the state had not produced information regarding the incident prior to the call of the case for trial. Gilstrap argues that the incident would be admissible to show that the child had knowledge that sex acts can occur between adults and children.

In certain contexts, evidence of a prior molestation is admissible, and would have been discoverable to Gilstrap pursuant to his pretrial motion filed pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). For example, in *Lemacks v. State*, 207 Ga. App. 160 (427 SE2d 536) (1993), a physician was permitted to testify about repeated penetration of the vagina and anus to show that someone other than the defendant could have caused the injuries; and in *Hall v. State*, 196 Ga. App. 523, 524 (2) (396 SE2d 271) (1990), evidence of previous molestation was admissible to explain a child's exhibition of behaviors consistent with the child abuse accommodation syndrome. However, neither of these exceptions, nor any other legitimate purpose for allowing such evidence, is present in this case. In *Wilson v. State*, 210 Ga. App. 705 (436 SE2d 732) (1993), this court held that the trial court did not abuse its discretion in ruling that evidence of a previous molestation was not relevant to the present charge for the purpose for which it was offered. Similarly, in this case, where the child was 13 at the time of the molestation and 14 at the time of trial, it is unlikely that, but for the previous incident, she would not have been aware that sex acts could occur between adults and children. Nor is there evidence that there was any confusion in her mind regarding the identity of the perpetrator. In this case, Gilstrap was convicted of three counts of child molestation, touching and fondling his daughter's vagina, causing her to touch and fondle his penis, as well as touching and fondling her breasts, activities which go beyond the previous incident. Because Gilstrap has failed to identify a theory under which the evidence of the prior act would be admissible, the evidence cannot be considered exculpatory and the trial court did not abuse its discretion in refusing to grant a continuance. OCGA § 17-8-22; *Strickland v. State*, 212 Ga. App. 170, 172 (3) (441 SE2d 494) (1994).

Gilstrap further asserts that the trial court erred in refusing to allow testimony at trial regarding the prior incident. For the reasons set forth above, the evidence of the prior incident was not admissible and the trial court did not abuse its discretion in disallowing the testimony.

3. Gilstrap asserts that the trial court erred in refusing to declare the rape shield statute (OCGA § 24-2-3, as amended effective July 1,

1989) unconstitutional. Prior to its amendment in 1989, the rape shield statute was held to be constitutional by the Georgia Supreme Court in *Harris v. State*, 257 Ga. 666 (362 SE2d 211) (1987). Although our research has not revealed a Supreme Court case which has addressed the constitutionality of the statute *as amended*, any ruling thereon would have to come from the Supreme Court which has exclusive jurisdiction over cases in which the constitutionality of a statute is drawn into question. *Pruitt v. State*, 203 Ga. App. 125, 127 (3) (416 SE2d 524) (1992); Ga. Const. 1983, Art. VI, Sec. VI, Par. II (1). It is clear, however, that any challenge to rape shield evidence was rendered moot by Gilstrap's acquittal on the charge of rape.

4. We see no error in the manner in which the trial court complied with Gilstrap's *Brady* motion. The only information which Gilstrap identifies in his brief as being potentially exculpatory but not provided to him prior to his cross-examination is a pre-trial statement made by the victim in which she suggested that Gilstrap used a condom during the alleged rape. At trial the victim testified that during the alleged rape Gilstrap put "something" on his penis, but she did not know what it was. As in Division 3 above, this enumeration refers to the rape charge upon which a "not guilty" verdict was returned. Pretermitting whether the failure to provide the statement to Gilstrap was error, the acquittal on the rape charge renders this enumeration moot. Gilstrap has failed to show material prejudice to his case from the failure of the court to turn over the evidence, which is necessary to warrant a reversal by this court. *Tribble v. State*, 248 Ga. 274 (280 SE2d 352) (1981).

5. In his final enumeration of error, Gilstrap complains that the trial court erred in allowing similar transaction evidence of acts which were not charged in the indictment without complying with the hearing requirements of Uniform Superior Court Rule 31.3. The state filed a written notice of its intent to introduce the evidence more than ten days prior to trial. Prior to jury selection, the prosecutor orally presented a summary of the similar transaction evidence, which consisted of the victim's account of acts which took place two weeks before the first incident of molestation charged in the indictment. These acts involved Gilstrap rubbing his penis against the victim's vagina and placing his mouth on her breasts. The court found that the evidence met the criteria for the admissibility of such evidence pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991) and allowed the evidence. The method of notification of intent to introduce evidence and the prosecutor's presentation of a summary of the evidence given prior to trial satisfies the requirements as contemplated by the rule and case law. *McGowan v. State*, 198 Ga. App. 575, 576 (1) (402 SE2d 328) (1991). Accordingly we see no basis for this assertion of error.

*Judgment affirmed. Beasley, P. J., concurs. Andrews, J., concurs specially.*

ANDREWS, Judge, concurring specially.

Under the case law cited by the majority opinion, the proffered expert testimony regarding the profile of a pedophile was inadmissible in the instant case. However, I see little difference (in quality of evidence) between expert testimony regarding abused child syndrome, which is admissible in this state, and the type of expert testimony excluded in this case. As argued by the appellant, there is the appearance of an unlevel playing field, with the state being allowed to present such "soft science" but the defendant being prohibited from doing likewise.

Evidence of "syndromes" should be greeted with caution, if not suspicion. In this age earmarked by the denial of personal responsibility, it sometimes appears that the defense strategy of choice is to formulate a new syndrome as the situation dictates. Our current legal lexicon includes such phenomena as the battered wife syndrome, the abused child syndrome, and the post-traumatic stress syndrome, and the catalogue is expanding. Recently, an attempt was made to establish an "urban survival syndrome" in a Texas murder trial, in which an expert explained that the defendant shot two unarmed men because the environment in which all three men lived had heightened his fear of the victims, who matched the profile of statistically the most dangerous men in America, i.e., inner city young black males. Time, June 6, 1994, p. 30.

Our Supreme Court has determined that expert testimony concerning the battered woman syndrome and the abused child syndrome is admissible in Georgia, provided the expert does not state a conclusion that the victim was abused. *Allison v. State*, 256 Ga. 851, 852 (353 SE2d 805) (1987); *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). However, that Court has not yet seen fit to question this court's resistance to adding other syndromes, such as the profile of a pedophile, to that list of admissible "soft science" evidence. See *Jennette v. State*, 197 Ga. App. 580 (398 SE2d 734) (1990) (expert testimony of pedophile's profile *and* expert testimony concerning a "lying child syndrome" held inadmissible).

The formulation of a psychological or sociological profile of a pedophile has gained little acceptance in either the scientific community or the courts. See *Flanagan v. State*, 586 S2d 1085, 1115 (Fla. 1991). In fact, it appears that " '[w]ith the notable exception of courts in California, . . . virtually every appellate court that has ruled on the admissibility of expert testimony regarding the psychological profile of child molesters has rejected it.' " *State v. Michaels*, 625 A2d 489, 510 (N. J. 1993), quoting from Peters & Murphy, Profiling Child Sex-

ual Abusers, Legal Considerations, 19 Crim. Justice and Behavior 38, 39 (1992).

Even evidence of syndromes associated with victims has met with divergent judicial treatment. Some courts have excluded such evidence where it was adduced for the sole purpose of proving the victim was abused, while admitting the same type of evidence where it was submitted to rehabilitate a witness whose credibility was attacked. *Flanagan v. State*, supra at 1113-1114. As noted above, in Georgia an expert is permitted to describe the abused child syndrome but may not conclude that the child was abused. This often results in the admissibility of such evidence depending upon a semantical distinction, in that experts *are* permitted to describe the syndrome and then state that the victim's behavior was consistent with that syndrome. See *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986).

It is difficult to explain why we should put stock in psychological evaluation and opinion with regard to syndromes pertaining to victims, yet extend no credence to syndromes or profiles relating to offenders. Perhaps the better solution would be to exclude all syndrome evidence. However, this court having no power to close the door opened by the Supreme Court, I suppose the best we can do is to continue to screen out other dubious syndromes as they are imagined and promoted by individuals who need to explain away their conduct.

DECIDED OCTOBER 31, 1994 —
RECONSIDERATION DENIED NOVEMBER 10, 1994 —

*Troy R. Millikan,* for appellant.
*Lydia J. Sartain, District Attorney, Leonard C. Parks, Jr., Assistant District Attorney,* for appellee.