## 77250. BURLEY v. THE STATE.
(378 SE2d 328)

BIRDSONG, Judge.

Edward D. Burley, appellant, brings this appeal from his conviction for rape and aggravated sodomy. From the evidence presented, the jury was authorized to find that the victim was working at an all-night gasoline service station on the Cumberland Parkway, near Smyrna, Georgia. Early in the morning hours of May 13, 1987, she saw two cars pull into the station, one was an orange Camaro and one was a blue Thunderbird with a white top. The people in the cars spoke briefly and the Camaro left. The man in the Thunderbird was the appellant. He came to the cashier's cage with a page torn from a phone book and asked for directions on how to get to the Scottish Inn motel. She gave him directions and they carried on a conversation for about 15-20 minutes, according to her estimate. He told her he was working for a photography company and took portraits of children and the family and wanted to know if she was married and had children. She said yes and he wanted her phone number but she told him she did not have a phone and refused to give him her address. Appellant asked if she would like to go out and she said, "No," that she was married. He acted mad and left. Later, the victim was taking trash to the dumpster behind the service station and saw the orange Camaro and the blue Thunderbird. There was no one in the Camaro. While she was placing the trash in the dumpster, she heard someone running behind her and someone threw something over her head and she screamed. The other person told her several times to "Shut up or I'll kill you." She was dragged down the embankment behind the station into the woods and the man told her he had a gun and would kill her. Something cold and hard was pressed into her stomach and she became quiet. She was raped and the man committed oral sodomy upon her. She called the police and they arrived before the two people in the Camaro could leave.

Sheryl Dover and Valerie Carr were driving home in Dover's Camaro when the appellant pulled his car alongside theirs at a 7-Eleven store and started making "vulgar . . . gestures. . . ." Dover drove away and appellant followed. Dover drove into the gas station where the victim was working and stopped. Appellant came up to her

and asked for directions to the Scottish Inn motel where he was staying. Dover drove away in an attempt to get away from the appellant. She drove around for a few minutes and returned to the same gas station to use the rest room. Dover and Carr went into the rest room and stayed for 15-20 minutes. Carr was ill and vomited several times. When they came out, they saw police cars and were asked to give statements as to what they had seen and heard.

Appellant took the stand in his own defense and admitted that he had seen and spoken to Dover and Carr and then had attempted to phone his motel room. After receiving no answer, he tore the page out of the phone book and took it to the cashier at the gas station and asked her for directions. They struck up a conversation and the victim told him a lot about her marriage and she had marriage problems, that "her husband and her [were] having bad times. She said they was going through some rough times. She didn't say exactly what was going on. . . ." He said she asked him if he wanted to smoke some marijuana and he declined, so she smoked one "joint" by herself. Following that she asked him to have sex and they went into the car wash and each performed oral sex on the other and then they had vaginal intercourse while she was standing. Following that he left, but was unable to find the Scottish Inn motel where he was staying and spent the night in his car. He got a job the next day and was immediately sent to Alabama where he stayed until he went to his home in Indiana. He was asked if he went to Florida and he said "no," that he had gone to Indianapolis.

In the appellant's recorded statement, the investigator told him he had made it difficult for them. He responded: "Yeah. When — when I — I talked to Angie [his fiancee] when I was in Florida. I had to go down there 'cause I — I had got in a little bit of trouble. . . ." The investigator then asked him "what happened out west?" Appellant said: "You know, I came back from Florida and I wanted to—I had seen the southeast coast . . . so I figured I wanted to go out west for a while, and I went out there. . . ." The jury returned a verdict of guilty and this appeal followed. *Held*:

1. Appellant alleges there is an insufficiency of evidence to support a conviction "as the Complainant was unable to identify Appellant as her perpetrator." Identity is not critical here. Appellant admitted he had oral and vaginal sex with the complainant. Consent is the principle issue. Appellant claimed the act was consensual, but the victim testified she was raped and sodomized. Appellant was placed at the scene by the victim and Dover. Appellant gave the victim his motel room number, and she and Dover knew he was asking for the Scottish Inn. Appellant admitted he was staying in the Scottish Inn. The officers saw trash on the victim's clothes. The doctor who examined the victim in the hospital found in the pelvic area "earth dirt

and leaves and twigs and things like that." The appellant said the act of intercourse took place in the car wash while the victim was standing. The victim said the act took place on the ground, in the woods. The officers verified that in the woods immediately behind the gas station there was "evidence of a struggle in the place where somebody had been laying on the ground." Because the victim had been given the room number of appellant, and he did not go back to his motel that night, but said that he went to Alabama the next day and then to Indiana, which conflicted with his earlier statement to the police that he went to Florida and the west coast, the jury was authorized to consider whether this was evidence of flight (*Fredericks v. State*, 172 Ga. App. 379 (2) (323 SE2d 265)); and if such evidence was flight, the jury was authorized to decide whether his failure to remain at the scene was circumstantial evidence of guilt. *Boutwell v. State*, 256 Ga. 63, 65 (344 SE2d 222).

Where the evidence is viewed in a light favorable. to the verdict reached, we find the evidence sufficient to enable any rational trier of fact to find the existence of the offenses charged, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Error is alleged in the refusal of the trial court "to admit evidence of complainant's prior marital problems, as it came within one of the exceptions to the Rape Shield Law." We find no error. Appellant stated that the complainant told him in their conversation prior to them having sex that she and her husband were "having problems; they don't get to see each other very much, 'cause he works all day and she works mostly nights." During the trial, Burley said the complainant told him "her husband and her [were] having bad times. She said they was going through some rough times. She didn't say exactly what was going on. . . ." Counsel contended that when he questioned the victim about whether she and her husband "ever had any problems," the trial court erred in refusing to permit him to explore this area as it bore on the issue of consent. The court ruled that counsel could impeach the woman's testimony but he would not permit him to go into the background of her marital problems—what they were. The victim was asked what was the basis of their "marital problems," and she said it involved an accusation by her husband that she had an affair with one person. The final ruling by the court was that the victim could be cross-examined about what happened that day, what she said that day, and she could be impeached by prior inconsistent statements, but he would not permit counsel to "go back into her marital history on cross-examination."

The rape shield statute, OCGA § 24-2-3, prohibits evidence of past sexual behavior of the complaining witness, either on direct or cross-examination, except as permitted by the statute. Prior sexual behavior proscribed includes "evidence of the complaining witness's

marital history." However, past sexual behavior of the complaining witness is admissible only if the accused is directly involved or such evidence "supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of. . . ." Id. (b).

The trial court did not err in refusing to admit this evidence when the appellant testified that the complainant told him "[s]he didn't say exactly what was going on. . . ." "Marital problems" can be either one of several types—economic, personality conflicts, incompatibility, jealousy, sexual, or just plain ornery. In this particular instance, it was infidelity. But, appellant admitted that the victim did not tell him which type it was. Hence, his lack of knowledge that the victim's marital problems related to infidelity could have had no reasonable bearing on whether the victim would consent to the conduct complained of. This enumeration is without merit.

3. It is contended that appellant's statement was given "with hope of benefit and was therefore coerced and involuntary." Appellant's attack is two-pronged: (a) he claims the officer told him if he would make a statement he would make a "recommendation to the DA that a bond would be set for me, and he said he guaranteed me a bond if I made a statement, and I agreed to it," and (b) the trial court suppressed a portion of the statement, and if hope of benefit pertained to a portion of the statement, the court should have suppressed the entire statement.

(a) The officer involved denied making any promise to appellant regarding bond and said there was no discussion of his wanting a bond prior to him giving his statement. But, that after the interview when Burley was waiting to have a warrant served on him, he asked about a bond, and the officer told him he would be opposed to a bond. On appeal, where the evidence is in conflict, the trial court's findings as to factual determinations and credibility will be upheld unless clearly erroneous. *Short v. State*, 256 Ga. 165, 167 (3) (345 SE2d 340). Such findings are not clearly erroneous. See *Green v. State*, 154 Ga. App. 295, 296 (267 SE2d 898); see *Cooper v. State*, 256 Ga. 234, 235 (347 SE2d 553), construing " 'slightest hope of benefit' as meaning the hope of a lighter sentence."

(b) The taped interview of appellant by the investigating officer shows a *Miranda* warning was given prior to starting the interview. Burley related his version of the entire event; then the investigator told him, in essence, they had other evidence beside the statement of the victim and "what you've said is not entirely true, and you know that." Thereafter the investigator told Burley, "give me a reason . . . to help you. . . . Tell me the truth." The investigator also said: "I think you — I think you made a mistake . . . if you want me to work with you on this and help you get through this without too much

damage, you need to recall your facts a little bit. . . ." The trial court excluded everything said after this statement by the investigator. It is unnecessary for this court to rule upon the question of whether such statement by appellant that followed this colloquy was inadmissible. It is necessary only for us to conclude that even if such verbiage is considered to be improper as holding out "hope of benefit" (OCGA § 24-3-50), it could not relate back to influence anything said by appellant prior to that time. We have found no error.

4. The trial court did not err in refusing to strike a juror who was a medical doctor and had worked with rape victims and whose wife was a counselor for rape victims, when he was questioned at length by the trial court and stated that "he could listen to the evidence of both sides and render a fair and impartial decision in spite of the feelings he had. . . ." Whether to strike a juror for cause lies within the sound discretion of the trial court. *Godfrey v. Francis*, 251 Ga. 652, 662 (308 SE2d 806); *Patterson v. State*, 239 Ga. 409, 411 (238 SE2d 2). Although the voir dire was not transcribed, it is clear from the recollection of the court and counsel that the doctor's bias extended only to the offense itself, not the offender, and the juror had no firm or fixed opinion as to the guilt of this accused. See *Jordan v. State*, 247 Ga. 328, 337 (276 SE2d 224). Where the otherwise qualified juror indicates he can and will fairly evaluate the evidence, there is no abuse of discretion by the trial court in failing to strike the juror for cause. *Foster v. State*, 248 Ga. 409, 411 (283 SE2d 873); *Strong v. State*, 161 Ga. App. 606, 607-608 (288 SE2d 921).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JANUARY 5, 1989 —
REHEARING DENIED JANUARY 30, 1989.

*Linda B. Borsky*, for appellant.

*Thomas J. Charron*, District Attorney, *Debra H. Bernes*, *Nancy I. Jordan*, Assistant District Attorneys, for appellee.