## A02A1296. WILLIAMS v. THE STATE.
### (570 SE2d 362)

Phipps, Judge.

A jury found Antonio Williams guilty of two counts of rape and two counts of aggravated assault. Williams appeals, contending that the trial court (1) improperly excluded evidence of his previous consensual sex with the victims and (2) erroneously admitted DNA evidence derived from a blood sample taken after he had asked for a lawyer. As neither contention has merit, we affirm.

Taken in the light most favorable to the verdict,[1] the evidence showed that, around 3:00 a.m. on March 4, 2000, Williams approached G. J. on a street in Thomasville and offered to pay her $10 to have sex. G. J. agreed and accompanied Williams to a vacant lot, where he hit her in the face, pushed her to the ground, had intercourse with her, and then ran away. G. J. testified that although initially she had agreed to have sex with Williams, she did not agree to do so after he hit her and pushed her down. She also testified that he never paid her any money.

Later that morning, Williams approached A. W. on a nearby street, told her that he had $20, and asked if she would "like to do something." A. W. said "no." Williams then hit her on the head, dragged her to an abandoned house, and had intercourse with her in the yard. While A. W. screamed for help, Williams punched her face at least 20 times. He eventually fled as police arrived.

Both G. J. and A. W. identified Williams as their attacker at a pre-trial photographic lineup, and G. J. also identified him in court. In addition, DNA testing revealed the presence of Williams's semen in G. J.'s body shortly after the incident.[2]

1. Williams sought to introduce evidence that he had previously had consensual sex with both G. J. and A. W., but the trial court excluded it. Williams contends that the exclusion was error.

Evidence of a rape victim's past sexual behavior generally is not admissible.[3] Under OCGA § 24-2-3 (b), however, such evidence may be introduced if the court finds that the victim's past sexual behavior (1) directly involved the participation of the defendant and (2) supports an inference that the defendant could have reasonably believed that the victim consented to the conduct of which he is accused.[4] We

---

[1] See *Sweeney v. State*, 233 Ga. App. 862, 863 (1) (506 SE2d 150) (1998).

[2] A. W. testified that Williams did not ejaculate while raping her because he was preoccupied with hitting her.

[3] OCGA § 24-2-3 (a).

[4] Such evidence also may be admitted under OCGA § 24-2-3 (c) (2) if the trial court finds that it is "so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented to the conduct complained of and that justice mandates the admission of such evidence." Although Williams relied on this ground at trial, he does not do so on appeal. Therefore, we do not consider it.

will not reverse a trial court's decision to exclude evidence of a victim's past sexual behavior unless the court abused its discretion.[5] Moreover, we accept the factual findings and credibility determinations made by the court at pre-trial hearings on the admissibility of evidence unless they are clearly erroneous.[6]

In this case, Williams testified that on two separate occasions in 1998, G. J. and A. W. agreed to have sex with him in exchange for money or drugs. Two other witnesses also testified that they had seen G. J. and A. W. have sex with other men in exchange for money or drugs. According to Williams, his past experiences with G. J. and A. W. led him to believe that they consented to have sex with him on March 4, 2000. Williams admitted hitting A. W. that morning, but insisted he did so after they had had sex. He denied hitting G. J.

Both G. J. and A. W. admitted that they had previously had sex with men in exchange for money or drugs. However, both denied having had sex with Williams before he attacked them on March 4, 2000. G. J. testified that she had never seen Williams before that morning, and A. W. testified that she had seen him once on the street but did not know him.

In addition, G. J. testified that Williams hit her and pushed her to the ground before having sex with her, that the sex was forcible and against her will, and that she suffered scratches on her legs from the incident. A. W. testified that when Williams had sex with her, he repeatedly told her to "shut up" and then "beat [her] up," causing her to suffer bruises and a swollen eye. Photographs taken at the hospital shortly after the incidents were admitted to show the extent of both women's injuries.

After hearing this evidence, the trial court found that the victims' past sexual behavior neither directly involved Williams nor supported an inference that he reasonably believed that they consented to have sex with him on March 4, 2000. Thus, the court concluded that Williams failed to satisfy either prong of OCGA § 24-2-3 (b).

By finding that the victims' past sexual behavior did not directly involve Williams, the court obviously believed the victims' testimony that they had never had sex with him before the morning in question. We will not disturb that credibility determination.

Nor will we disturb the court's conclusion that Williams did not reasonably believe that the victims consented to have sex with him. In *Davis v. State*,[7] the defendant and two other men drove the victim

---

[5] *Davis v. State*, 235 Ga. App. 362, 363 (1) (509 SE2d 655) (1998).

[6] See, e.g., *Hicks v. State*, 255 Ga. 503 (1) (340 SE2d 604) (1986); *Yarbrough v. State*, 241 Ga. App. 777, 779 (2) (527 SE2d 628) (2000).

[7] Supra.

to a back country road and raped and hit her for several hours, until she was able to escape by running naked through the woods. The defendant sought to introduce evidence that the victim had consented to have sex with him many times before in exchange for money or drugs. We ruled that the trial court did not abuse its discretion in excluding such evidence: "In light of the victim's testimony, the trail of clothing left near the crime scene, and the evidence of her injuries, we cannot say that Davis' claim to prior consensual sex with her substantially supports the conclusion that he reasonably believed she consented on the night of the offense."[8] As in *Davis*, the victims in this case were beaten. G. J. testified that she was pushed to the ground and hit in the face; A. W. testified that she was dragged to the yard of an abandoned house and told repeatedly to "shut up" while being punched in the face. This evidence of force and lack of consent supported the trial court's conclusion that Williams could not reasonably have believed that the victims willingly had sex with him.

Because Williams failed to satisfy the requirements of OCGA § 24-2-3 (b), the court did not abuse its discretion in excluding evidence of the victims' past sexual behavior.

2. Williams also argues that the trial court erred by admitting DNA evidence derived from a blood sample that was obtained after he had invoked his right to counsel. Detective Rochelle Denmark of the Thomasville Police Department testified that after Williams was arrested, she read him his *Miranda* rights and he asked for a lawyer. Denmark then requested a sample of Williams's blood for DNA testing, and he consented. Williams claims that Denmark's request violated the rule announced in *Edwards v. Arizona*[9] and *Michigan v. Jackson*[10] that after an accused in custody invokes his right to counsel, he cannot be further interrogated until counsel is present, unless the accused initiates further communication with the authorities.[11]

This contention is without merit. In *Schmerber v. California*,[12] the United States Supreme Court held that a blood sample, although potentially incriminating, is not testimonial or communicative in nature.[13] Thus, the State does not violate an accused's privilege against self-incrimination by requesting that he give a blood sample,[14] or even by compelling him to do so.[15] Because Denmark's re-

---

[8] Id. at 363 (1).

[9] 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[10] 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1989).

[11] See *Roper v. State*, 258 Ga. 847, 849 (1) (375 SE2d 600) (1989).

[12] 384 U. S. 757 (86 SC 1826, 16 LE2d 908) (1966).

[13] Id. at 765.

[14] See *Scanlon v. State*, 237 Ga. App. 362, 363-364 (1) (514 SE2d 876) (1999).

[15] *Schmerber*, supra at 765; see also *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985) ("In Georgia, the state may constitutionally take a blood sample from a defendant without his consent. [Cit.]").

quest that Williams give blood was not a form of interrogation, *Edwards v. Arizona* and *Michigan v. Jackson* do not apply.

Moreover, because the State could have drawn Williams's blood even without his consent, the fact that Denmark sought Williams's consent when he was unrepresented did not infringe upon his right to counsel. In *Schmerber*, the state drew Schmerber's blood over his objection, which was made on the advice of counsel. Schmerber argued, among other things, that the state violated his right to counsel. The Court squarely rejected this claim:

> Since [Schmerber] was not entitled to assert the privilege [against self-incrimination], he has no greater right because counsel erroneously advised him that he could assert it. His claim is strictly limited to the failure of the police to respect his wish, reinforced by counsel's advice, to be left inviolate. No issue of counsel's ability to assist [Schmerber] in respect of any rights he did possess is presented.[16]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 16, 2002.

*Oliver R. Register*, for appellant.

*J. David Miller, District Attorney, James E. Hardy, James L. Prine, Assistant District Attorneys*, for appellee.

---

[16] *Schmerber*, supra at 766.