## A03A1558. IVEY v. THE STATE.
(590 SE2d 781)

BLACKBURN, Presiding Judge.

Following a jury trial, Timothy Todd Ivey appeals his convictions for the aggravated sodomy of S. R., attempting to elude a police officer, and obstruction of an officer, contending that: (1) the evidence was insufficient to support the verdict of aggravated sodomy; and the trial court erred by (2) granting the State's motion in limine, premised on the Georgia Rape Shield Statute,[1] to exclude all evidence of his sexual history with the victim; and (3) denying his request to file an interlocutory appeal regarding this grant of the State's motion in limine. Ivey does not challenge the sufficiency of the evidence regarding his convictions for attempting to elude a police officer and obstruction of a police officer. Nonetheless, the record reveals ample evidence supporting these convictions. *Jackson v. Virginia*.[2] For the

---

[1] OCGA § 24-2-3.
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

reasons set forth below, we affirm Ivey's convictions for attempting to elude a police officer and obstruction of an officer, and we reverse his conviction for aggravated sodomy.

1. Ivey contends that the evidence was insufficient to support his conviction for the aggravated sodomy of S. R. This enumeration is patently erroneous.

Viewed in this light, the record shows that, at around 3:00 a.m. on April 22, 2001, Officer Jonathan Williams was on motorcycle patrol when Ivey's car passed him at a high rate of speed. As Officer Williams activated his emergency lights to stop Ivey for speeding, S. R. burst out of the passenger door, fell on her knees, and yelled that she had been raped. After accelerating his car and attempting to elude the officer, Ivey stopped the car, and he was later forcefully removed from his vehicle and handcuffed after resisting arrest. At trial, S. R. testified that Ivey drove her to a remote area and forced her to engage in both oral, vaginal, and anal sex. After the incident, police took S. R. to a medical center where a rape examination revealed anal bleeding and tears. This evidence was sufficient to support the jury's verdict. *Jackson*, supra.

2. Ivey contends that the trial court erred by granting the State's motion in limine, premised on Georgia's Rape Shield Statute, to exclude all evidence of his sexual history with the victim, and, as such, his conviction for aggravated sodomy must be reversed. We agree.

In the hearing on the State's motion in limine, both the accused, Ivey, and the complaining witness, S. R., testified that they had an ongoing relationship for a period of at least five years, during which time Ivey paid S. R., an active prostitute, for sex on at least five occasions. Ivey further testified that, on the night of the alleged rape, he had gone to S. R.'s apartment to solicit her for a further act of prostitution, and S. R. confirmed that Ivey initially approached her for this reason. Despite this longstanding history between Ivey and S. R., the trial court ruled that Ivey was *totally* prohibited from conveying to the jury anything at all about their relationship, including his reason for visiting S. R. that night, pursuant to Georgia's Rape Shield Statute and *Davis v. State*.[3] The Rape Shield Statute does not support this ruling and *Davis* is distinguishable from the case at hand.

Georgia's Rape Shield Statute, OCGA § 24-2-3, states:

(a) In any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examina-

---

[3] *Davis v. State*, 235 Ga. App. 362 (509 SE2d 655) (1998).

tion of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards. (b) In any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness may be introduced if the court, following the procedure described in subsection (c) of this Code section, finds that the past sexual behavior directly involved the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

OCGA § 24-2-3 (c) (2) provides that, following an in camera hearing to determine the admissibility of evidence,

if the court finds that any of the evidence introduced at the hearing is admissible under subsection (b) of this Code section or is so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented to the conduct complained of and that justice mandates the admission of such evidence, the court shall by order state what evidence may be introduced by the defense at the trial of the case and in what manner the evidence may be introduced.

Thus, the Rape Shield Statute indicates that evidence of the complaining witness's past sexual conduct is admissible in two contexts: (1) when the past sexual conduct directly involves the participation of the accused and supports an inference that the accused could have reasonably believed that the complaining witness consented, OCGA § 24-2-3 (b); and (2) when the past sexual conduct is so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented. In this case, at least some of the testimony regarding the past history of Ivey and S. R. would be admissible under either one of these grounds, as the ongoing customer-prostitute relationship between Ivey and S. R. would certainly support a reasonable inference that he believed that his sexual relationship with her on the night in question was consensual.

This case is similar to *Jackson v. State*,[4] rev'd for other reasons, *Curtis v. State*.[5] The facts of *Jackson v. State* are informative here:

> Jackson and a co-hort, Larry Brown, confronted a woman on the street who they believed had failed to pay for cocaine received from Jackson. Despite her protests, Jackson grabbed her arm and forced her down some steps into an isolated area. When the woman denied receiving the cocaine and denied having money to pay, Brown threatened to kill her and Jackson pointed a knife at her within a foot of her face. While Jackson emptied her purse, Brown removed her clothes and fondled her breasts, vagina, and anus to search for the cocaine. Finding no cocaine and no money, Jackson demanded oral sex from the woman, who vigorously protested. Holding the knife, Jackson forced her into an outdoor bricked area of the local community center and with the assistance of Brown forced her mouth onto Jackson's penis. Over the next two hours, the protesting woman was subjected to a series of brutal and often simultaneous sexual assaults, ranging from anal and vaginal intercourse to fellatio to belt-whippings on her buttocks and fire near her vagina, and involving Jackson, Brown, McGinty, and other men. A crowd including children gathered to watch the assaults, which eventually ended when the battered woman fainted and a neighbor came to her rescue.

Id.

At trial, Jackson proffered his testimony that he and the alleged complaining witness had a history of exchanging sex for drugs. The trial court allowed Jackson to testify regarding this relationship, but, on appeal, Jackson argued that the trial court should have allowed even more evidence about the complaining witness's sexual conduct. This Court approved the trial court's decision, holding:

> Here Jackson proffered only his [own] testimony at the in-camera hearing. . . . Based on Jackson's proffer, the court ruled his testimony was admissible. The court expressly left open the door to allow any party during the trial to request another in-camera hearing to elicit additional testimony if that party wanted to have anyone else testify to prior sexual conduct of the victim. . . . Jackson never requested another in-camera hearing [or] proffered the testimony of [other]

---

[4] *Jackson v. State*, 254 Ga. App. 562, 563 (562 SE2d 847) (2002).

[5] *Curtis v. State*, 275 Ga. 576 (571 SE2d 376) (2002).

> witnesses. . . . Since only Jackson testified at the in-camera hearing, *the court did not abuse its discretion in ruling that only Jackson's testimony was admissible.*

(Emphasis supplied.) *Jackson v. State*, supra at 565 (2).

In this case, despite Ivey's proffered testimony regarding his five-year relationship with S. R., which S. R. freely admitted, the trial court *totally* proscribed any and all testimony regarding the relationship. In doing so, the trial court overextended the protection of the Rape Shield Statute. At the least, as in *Jackson v. State*, Ivey should have been allowed to testify about his past relationship with S. R. Certainly, it would bear directly on the crime for which he was charged and provide at least an inference that he believed that S. R. consented to sex on the night in question.

In deciding a case such as this, we must be wary of the fact that the Rape Shield Statute requires only a *reasonable* inference, not even a probable or necessary one, as a prerequisite to admissibility. We must also be wary of the fact that an inference, itself, is merely a deduction or conclusion "which with reason and common sense lead[s] the jury to draw from facts which have been established by the evidence in the case." Black's Law Dictionary (6th ed. 1990).

In this case, the facts show that Ivey and S. R. had an ongoing sex-for-pay relationship for at least five years and that, on the night in question, Ivey went to find S. R. to solicit her for another act of prostitution consistent with this relationship. From these facts, the jury could certainly draw a reasonable inference, based on reason and common sense, that Ivey might have believed that the sexual acts were consensual. By denying Ivey the right to even present the facts to the jury, the trial court below and the dissent here inappropriately usurp the function of the jury. *Jackson v. Virginia*, supra.

*Davis*, cited by both the trial court and the dissent, does not control here. In *Davis*, the defendant and two other men drove the complaining witness to a secluded area where they raped and beat her for several hours until she managed to escape by running naked through the woods. At trial, the defendant sought to introduce evidence that the complaining witness had agreed to consensual sex with him in exchange for money or drugs on a number of prior occasions. The trial court excluded this evidence, and we affirmed, holding: "In light of the victim's testimony, the trail of clothing left near the crime scene, and the evidence of her injuries, we cannot say that [the defendant's] claim to prior consensual sex with [the victim] substantially supports the conclusion that he reasonably believed she consented on the night of the offense." *Davis*, supra at 363 (1).

*Davis* is distinguishable from the case now before us. In *Davis*, there is no indication that the complaining witness *admitted* a prior

sexual relationship with the defendant. In the case now before us, on the other hand, S. R. has admitted that she and Ivey had a sexual relationship spanning a five-year period. As such, the existence of the prior sexual relationship does not turn on a resolution of the credibility of the parties. This also distinguishes cases such as *Williams v. State*.[6]

Furthermore, the injuries suffered by the complaining witness in *Davis* were far greater than those suffered by the complaining witness in this case. In *Davis*, the complaining witness was savagely beaten, thereby supporting the trial court's conclusion that the defendant could not have reasonably believed that the sexual act on the date in question was consensual. In contrast, the injuries suffered by the complaining witness in this case, though regrettable, are not indicative of the type of brutal assault in *Davis*. In fact, the State's expert witness who opined regarding S. R.'s injuries stated that she could not determine whether they were the result of consensual or nonconsensual sex. Accordingly, the injuries suffered by S. R. do not support the trial court's finding which precluded any inference that Ivey believed his sexual encounter with S. R. was consensual.

Moreover, the evidence sought to be introduced by Ivey had a direct bearing on S. R.'s motivation to fabricate the allegation of rape, and, as such would be admissible pursuant to *Richardson v. State*.[7] In *Richardson*, the defendant met the complaining witness while she was walking to an ex-boyfriend's home to return his jacket.

> During cross-examination, the defense sought to inquire further about the former boyfriend. The contention was that the victim wanted to rekindle a relationship with him, but his jacket became stained with blood and semen during the voluntary intercourse with [the defendant]. According to the defense, she then fabricated the rape charge to explain those stains and to prevent the act of consensual sex from hindering a possible reconciliation with her previous boyfriend. The trial court disallowed this cross-examination, finding that it was irrelevant and barred by the rape-shield law.

Id.

Although this Court affirmed the trial court in *Richardson v. State*,[8] our Supreme Court granted certiorari and ruled that the trial

---

[6] *Williams v. State*, 257 Ga. App. 54 (570 SE2d 362) (2002).

[7] *Richardson v. State*, 276 Ga. 639 (581 SE2d 528) (2003).

[8] *Richardson v. State*, 256 Ga. App. 322 (568 SE2d 548) (2002).

court erred by excluding the evidence sought by the defense. Our Supreme Court held:

> Evidence merely that the victim has or had a romantic relationship with another man does not reflect on her character for sexual behavior. Therefore, so long as [the defendant] confined his questioning to the non-sexual nature of the victim's former relationships, the statute would not be a basis for curtailing his cross-examination of her. See *Banks v. State*[9] (State's introduction of testimony that victim was "going steady" did not open door to introduction by defense of evidence of her past sexual experience). Compare *Harris v. State*[10] ([unproven allegation] that victim was prostitute related to her sexual behavior [with other men] and was inadmissible); *Alford v. State*[11] (victim's mode of dress at time of rape was inadmissible); *Burley v. State*[12] (victim's marital history implicates her sexual behavior and was inadmissible).
>
> There is no indication that the defense intended to exceed that limitation and to pursue the inadmissible topic of the victim's sexual history with other men. The proposed inquiry was confined to the existence of a relationship with an ex-boyfriend and whether the desire to reestablish that relationship was a motive to make a false claim of rape. "The possibility that (the proposed questions) may have been construed as implicating past sexual conduct could have been eliminated with a corrective instruction to the jury." *George v. State*.[13] Therefore, the trial court and the Court of Appeals erred in relying upon the rape-shield law to preclude [the defendant] from cross-examining the victim in this regard. *George v. State*, supra at 176 (1); *Villafranco v. State*.[14]
>
> The evidentiary ruling would be correct only if non-sexual questioning of the victim about her previous relationship was irrelevant to the motive that [the defendant] attributed to her. He did not contend that she was lying to protect an existing relationship. Compare *Olden v. Kentucky*.[15] His position was that, because she desired to rekindle a relationship with her former boyfriend, she needed an

[9] *Banks v. State*, 185 Ga. App. 851, 853 (2) (366 SE2d 228) (1988).
[10] *Harris v. State*, 257 Ga. 666 (1) (362 SE2d 211) (1987).
[11] *Alford v. State*, 243 Ga. App. 212, 215 (5) (534 SE2d 81) (2000).
[12] *Burley v. State*, 190 Ga. App. 75, 77 (2) (378 SE2d 328) (1989).
[13] *George v. State*, 257 Ga. 176, 177 (1) (356 SE2d 882) (1987).
[14] *Villafranco v. State*, 252 Ga. 188, 193 (1) (313 SE2d 469) (1984).
[15] *Olden v. Kentucky*, 488 U. S. 227 (109 SC 480, 102 LE2d 513) (1988).

explanation for the stained jacket when she returned it to him and, thus, she fabricated the rape charge. As the trial court and the Court of Appeals observed, she was not compelled to return the stained jacket and had other options, such as cleaning it or claiming that it was lost, which would not threaten a possible reconciliation. The existence of other measures which, if pursued, would prevent the victim's former boyfriend from learning about the sexual encounter with [the defendant] is certainly a factor bearing on the viability of the defense's contention that she lied about engaging in consensual sex with him. However, such credibility determinations are properly left to the jury. On cross-examination, " 'it is always permissible to sift the motives of the witness and to show, if possible, any reason other than a purpose to tell the truth which may consciously or unconsciously actuate him in his testimony. (Cit.)' (Cits.)" *Arnold v. State.*[16] Although a trial court has discretion in determining the admissibility of evidence, the long-standing rule in this state favors the admission of any relevant evidence, no matter how slight its probative value. *Hudson v. State.*[17] The trial court erroneously prevented [the defendant] from presenting for the jury's consideration all testimony relevant to his consent defense, and the Court of Appeals erred in affirming that ruling.

*Richardson*, supra, 276 Ga. at 640-641 (1).

As an initial matter, Ivey was attempting to elicit testimony regarding S. R.'s sexual relationship with him, not other men. As in *Richardson*, "[t]here is no indication that the defense intended to exceed that limitation and to pursue the inadmissible topic of the victim's sexual history with other men." *Richardson*, supra, 276 Ga. at 640-641 (1). In addition, Ivey's proposed inquiry was confined to the existence of his ongoing relationship of prostitution with S. R., including on the night of the alleged rape, which might give S. R. a motive to make a false claim of rape to avoid prosecution for her own crime of prostitution. The exclusion of this testimony would be "correct only if . . . questioning of the victim about [the ongoing] relationship was irrelevant to the motive . . . attributed to her." Id. at 641.

Accordingly, for all the reasons stated above, the trial court erred by excluding the evidence regarding Ivey's ongoing sexual relationship with S. R. pursuant to the Rape Shield Statute, and, as

---

[16] *Arnold v. State*, 163 Ga. App. 10, 13 (4) (293 SE2d 501) (1982).
[17] *Hudson v. State*, 273 Ga. 124, 126 (2) (538 SE2d 751) (2000).

such, his conviction for aggravated sodomy must be reversed and remanded for a new trial. This error, however, has no effect on the efficacy of his convictions for attempting to elude a police officer or obstruction of an officer, and these convictions are affirmed.

3. Finally, Ivey contends that the trial court erred by denying his request to file an interlocutory appeal regarding the State's motion in limine.

However, in determining whether an otherwise unappealable interlocutory order might be reviewed prior to final judgment, a trial judge is given carte blanche authority. *Lee v. Smith*.[18] Consequently, the court's refusal to permit an interlocutory appeal is not subject to review for an abuse of discretion.

*Judgment affirmed in part and reversed in part. Smith, C. J., Andrews, P. J., and Ruffin, P. J., concur. Miller, Ellington and Phipps, JJ., concur in part and dissent in part.*

PHIPPS, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's determination that the trial court's grant of the state's motion in limine under the Rape Shield Statute necessitates a reversal of Ivey's aggravated sodomy conviction.

The Rape Shield Statute bars admission of evidence of a rape victim's prior sexual behavior, even if it directly involves the participation of the defendant, if it does not also support an inference or conclusion that the defendant could have reasonably believed that the victim consented to the conduct of which the defendant is accused.[19] The Rape Shield Statute " 'is a strong legislative attempt to protect the victim-prosecutrix in rape cases by the exclusion of evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused.' [Cit.]"[20] We will not reverse a trial court's decision to exclude evidence of a victim's past sexual behavior unless the court abused its discretion; moreover, we accept the factual findings and credibility determinations made by the court at pre-trial hearings on the admissibility of evidence unless they are clearly erroneous.[21]

At the hearing on the state's motion in limine, Ivey testified that he had known the victim, S. R., for about five years and that on numerous occasions he had paid her money to perform oral sex or engage in sexual intercourse. According to Ivey, on the evening in

---

[18] *Lee v. Smith*, 119 Ga. App. 808 (168 SE2d 880) (1969).

[19] See OCGA § 24-2-3; *Williams v. State*, 257 Ga. App. 54 (1) (570 SE2d 362) (2002); *Davis v. State*, 235 Ga. App. 362, 363 (1) (509 SE2d 655) (1998).

[20] *Harris v. State*, 257 Ga. 666, 667 (1) (a) (362 SE2d 211) (1987).

[21] *Williams v. State*, supra, 257 Ga. App. at 54-55.

question, he located S. R. in an apartment and asked her to take a ride with him so that she could perform oral sex. Ivey testified that after she performed oral sex on him, they engaged in vaginal and then anal sexual intercourse and that all of their sexual relations had been consensual.

S. R. acknowledged that on prior occasions she had performed oral sex on Ivey and had engaged in vaginal sexual intercourse with him for money; she denied having ever before engaged in anal sexual intercourse with him. S. R. testified that when Ivey came to the apartment on the evening in question, she told him that she could not have sex with him because she was on her period. But he told her that he would pay her just to ride around with him in the car and talk to him, and she agreed. According to S. R., Ivey forced her to perform oral sex on him, and to engage in vaginal and anal sexual intercourse, after she got into the car.

At trial, defense counsel argued that evidence that S. R. had had sex with Ivey for money on numerous prior occasions was highly relevant to the question of whether he reasonably believed she was consenting to the acts that formed the basis for the present charges against him. In reliance on *Davis v. State*,[22] the state argued that such evidence was inadmissible. Agreeing with the state, the trial court ruled that evidence of the victim's past sexual conduct was barred by the Rape Shield Statute.

Although the majority concludes that the evidence sought to be introduced by Ivey had a direct bearing on S. R.'s motive to fabricate the allegation of rape to avoid being prosecuted for the crime of prostitution, the defense did not seek to introduce evidence of Ivey and S. R.'s prior relationship for such purpose. That is understandable; given the fact that the arresting officer observed no sexual activity between S. R. and Ivey, it is difficult to envision how she could have had a motive to make a false claim of rape to avoid prosecution for prostitution. Therefore, *Richardson v. State*,[23] cited extensively in the majority opinion, is inapposite.

Before the jury, City of Gainesville Police Officer Jonathan Williams testified that he was on motorcycle patrol when Ivey's car passed him at a high rate of speed. As Officer Williams activated his emergency lights to stop Ivey for speeding, S. R. burst out of the passenger door, fell on her knees, and yelled that she had been raped.

S. R. testified that Ivey drove her to a remote area, stopped the car, grabbed her hair, "slammed [her] head down onto his penis," and forced her to perform oral sex. He then made her remove her pants,

---

[22] Supra, 235 Ga. App. at 363 (1).
[23] 276 Ga. 639 (581 SE2d 528) (2003).

put his hand around her neck as though he were choking her, and inserted his penis in her vagina. After several minutes, he told her to turn around and get on her knees, and he "rammed" his penis into her anus. Because S. R. was on her period, she was wearing a sanitary napkin. S. R. testified that, before Ivey raped her, she removed it and later threw it out the car window. It was subsequently recovered by police.

After the incident, police took S. R. to a medical center where a rape examination was performed. The nurse performing the examination observed erythema (or redness) on S. R.'s neck and shoulder, which appeared to have been caused or contributed to by physical assault. The nurse also observed menstrual blood in her vagina and nonmenstrual blood in her rectal area. S. R.'s anal bleeding, still active at the time of the examination, was described by the nurse as "very extensive." Extensive tears around the anal opening and hemorrhoidal tissue, caused by the recent application of force consistent with sexual assault, were also observed.

One might think that in a rape prosecution, evidence that the complainant had previously engaged in consensual sexual relations with the defendant for money would be invariably admissible. *Davis*[24] and *Williams*,[25] however, teach otherwise.

The defendant in *Williams* was convicted of committing rape and aggravated assault on two victims, G. J. and A. W. State's evidence showed that Williams had physically assaulted both G. J. and A. W., causing each of them visible injuries. Williams sought to admit his own testimony that on prior occasions both G. J. and A. W. had agreed to have sex with him in exchange for money or drugs, as well as testimony that other witnesses had seen both women have sex with other men in exchange for money or drugs. Williams admitted hitting A. W. but insisted that he did so after they had had sex; he denied hitting G. J. Both G. J. and A. W. admitted that they had previously had sex with other men in exchange for money or drugs; but they denied having had sex with Williams before he attacked them on the day in question. The trial court found that the victims' past sexual behavior neither directly involved Williams nor supported an inference that he had reasonably believed that they consented to have sex with him. We refused to disturb the trial court's credibility or relevancy determinations; and, citing *Davis*, we affirmed.

In *Davis*, the defendant and two other men raped a woman and forced her to orally sodomize them. The victim escaped by running naked through the woods to a house. The defendant claimed that the

---

[24] Supra, 235 Ga. App. at 363 (1).
[25] Supra, 257 Ga. App. at 54-55.

victim volunteered to have sex with the men for money, and that she had had sex with him for money or drugs on numerous prior occasions. We affirmed the trial court's exclusion of evidence of prior sexual activity between the defendant and the victim, holding:

> In light of the victim's testimony, the trail of clothing left near the crime scene, and the evidence of her injuries, we cannot say that Davis' claim to prior consensual sex with her substantially supports the conclusion that he reasonably believed she consented on the night of the offense. [Cit.] Nor does justice mandate the admission of such testimony. Accordingly, we decline to find that the trial court abused its discretion.[26]

The facts in *Jackson v. State*[27] were quite similar to those in *Davis*. In the former case, Jackson confronted a woman on the street because he believed she had failed to pay him for cocaine he had provided to her. At the time, the woman was in possession of neither money nor cocaine. As a result, Jackson and a number of male cohorts subjected the woman to a series of brutal sexual and physical assaults in view of a crowd of people. The trial court allowed Jackson to testify that he and the woman had a prior relationship in which they exchanged sex for drugs. On appeal, Jackson complained of the trial court's refusal to allow him to present testimony from other witnesses concerning his prior relationship with the woman. We found no error, because Jackson had not followed the procedure set forth in the Rape Shield Statute for the admission of such testimony by any witness other than himself. If the trial court in *Jackson* had considered *Davis*, it would have been authorized to find Jackson's testimony inadmissible as well.

In this case, the trial court was authorized to find that S. R. escaped from Ivey by jumping out of his moving car. And she sustained verifiable injuries consistent with her claim that she had been physically and sexually assaulted. Under the circumstances, the trial court in applying the law as set forth in *Davis* was authorized to find that S. R.'s past sexual behavior, though involving the participation of Ivey, did not support an inference that he reasonably believed that she consented to the conduct of which he was accused on the occasion in question, and that evidence that she was a prostitute would reflect adversely on her character more than it would contribute to the issue of the defendant's guilt or innocence.

---

[26] *Davis*, supra, 235 Ga. App. at 363 (1).

[27] 254 Ga. App. 562 (562 SE2d 847) (2002), aff'd on other grounds sub nom. *Curtis v. State*, 275 Ga. 576, 579 (3) (571 SE2d 376) (2002).

Moreover, the trial court's grant of the state's motion in limine did not unduly hamstring the defense. At trial, S. R. acknowledged that, although she had agreed to drive around with Ivey in his car in the middle of the night, she did not know his last name or his address or telephone number. Ivey was charged with aggravated oral sodomy and rape, as well as aggravated anal sodomy. The jury found him not guilty of the former two offenses and guilty of the latter. If the trial court had denied the state's motion in limine, it would appear that the evidence presented to the jury would have shown that Ivey had previously paid S. R. to perform oral sex and engage in sexual intercourse (which formed the basis for the offenses of which he was acquitted) but not anal sodomy (which formed the basis for the offense of which he was convicted). Therefore, although I recognize that the result is counterintuitive, I find that under the facts of this rape prosecution, the trial court did not commit a harmful abuse of discretion in prohibiting the defense from showing that the complaining witness and defendant had previously been involved in a prostitute/customer relationship.

Therefore, although I concur in Divisions 1 and 3, I dissent from Division 2 and the judgment.

I am authorized to state that Judge Miller and Judge Ellington join in this dissenting opinion.

DECIDED NOVEMBER 26, 2003.

*Mark A. Scott, Morris P. Fair, Jr.*, for appellant.
*Jason J. Deal, District Attorney, Lee Darragh, Assistant District Attorney*, for appellee.