[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 11, 2004
THOMAS  K. KAHN
CLERK

————————————————

No. 02-16224

————————————————

D.C. Docket No. 00-00135-CR-ORL-19

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARLAND GEORGE CURTIS,

Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Middle District of Florida

————————————————

**(August 11, 2004)**

Before ANDERSON,  BLACK and HILL, Circuit Judges.

HILL, Circuit Judge:

Garland Curtis was convicted of sexually assaulting a victim by force.  18 U.S.C. § 2241(a).  He appeals the denial of his motion for a judgment of acquittal or for a new trial.

I.

Garland Curtis, a waiter on a cruise ship, was convicted of sexual assault on a female passenger. Prior to his trial, Curtis was incarcerated in the Seminole County, Florida, jail. Also confined in that jail was Robert Bojan. Bojan, who had a record of felony convictions, had pled guilty to several other federal offenses based upon fraudulent conduct and was awaiting sentencing. Russell McLatchey represented Bojan. Bojan told McLatchey that Curtis confessed he had sexually assaulted the passenger.

McLatchey notified government counsel, Matthew Perry, who was prosecuting Curtis, of the confession. McLatchey, Bojan, and Perry, along with FBI agent Evans, met with Bojan to discuss the Curtis confession. During the meeting, the parties discussed the possibility that the government might file a motion in Bojan's fraud case notifying that court of his substantial assistance in the Curtis case and urging a sentence reduction. It is this discussion that provides the factual basis for the issue now before us.[1]

---

[1] Curtis also raises two other issues on appeal. His claim that the government did not prove venue is belied by the fact that the cruise ship sailed from and returned to United States territorial waters, thereby establishing venue. 18 U.S.C. § 7. The other issue – that the government constructively amended the indictment by introducing evidence that Curtis drugged the passenger – is meritless since the government did not argue that this formed an independent basis for conviction and the district court carefully instructed the jury that they must find that Curtis committed the assault by force.

Some three weeks later, McLatchey wrote a letter to Perry in which he referred to "promises" Perry made to Bojan at the meeting. Bruce Ambrose, government counsel prosecuting Bojan, responded by letter denying that the government made any promises to Bojan to assist him in exchange for his testimony. This letter was followed by a telephone call from both Perry and Ambrose to McLatchey reaffirming that the government had not promised to assist Bojan in any way.

Soon thereafter, Perry disclosed to Curtis' counsel that Bojan would testify and the details of the initial meeting between the government and Bojan. Additionally, the government provided defense counsel copies of the McLatchey letter and the Ambrose response. The government said then:

> As to Robert Bojan, the Government has not made any promises of favorable treatment or provided compensation to him and he has no written plea agreement. In return for Mr. Bojan's cooperation in this case, the government will consider same for a determination of whether he qualifies for substantial assistance, the same as any cooperating defendant. We have also agreed to bring his cooperation to the attention of state or local authorities if requested. Mr. Bojan contacted the Government about cooperating in this case and has never personally declined to cooperate herein, although there were discussions with his attorney about his willingness to do so. Enclosed you will find copies of two letters, one dated December 20, 2001, from Mr. McLatchey and one dated January 2, 2002, from AUSA Ambrose discussing Mr. Bojan's cooperation. The Government does not believe these letters are either Brady or Giglio but they are provided to you in an abundance of caution.

3

Finally, both Perry and an FBI agent met with Bojan to be sure that he knew that if he testified, he did so without any promise from the Government to seek to reduce Bojan's sentence. Bojan indicated that he understood.

At trial, Bojan testified about the confession. He was thoroughly impeached on cross-examination and by a defense witness (his former girlfriend) as a liar and felon whose testimony was unworthy of belief. Bojan made abundantly clear, when asked, that he was testifying because he hoped the government would assist him at his sentencing, although no definite promise had been made him. He also testified that McLatchey was negotiating with the government for such assistance.

Throughout these proceedings and during the trial,[2] Bojan and McLatchey talked frequently by phone. These jailhouse conversations were recorded. In them, the two discussed what they could expect from the government in return for Bojan's testimony.

After the case was submitted to the jury, Curtis discovered that the government had, in fact, filed a substantial assistance motion for Bojan in his pending fraud case and that Bojan had received a downward departure in his

---

[2] They did so despite the district court's invocation during trial of the rule of sequestration (both were subpoenaed witnesses). McLatchey told Bojan to lie about whether they had talked.

sentence. Curtis filed an emergency motion for mistrial, which the court heard after the verdict had been returned.

At the hearing, Curtis asserted that the government had withheld the fact that it had a "deal" with Bojan with regard to his testimony. Curtis argued that the fact that the government had filed a substantial assistance motion proved the existence of such a deal.

Ambrose and Perry testified that they had not agreed to any deal with Bojan, and had made no promise to assist him in any way. Ambrose further testified that, after Bojan's testimony in the Curtis trial, he sought supervisory approval to file a substantial assistance motion in Bojan's fraud case, which he received.

McLatchey testified that he was not aware of any promises by the government other than a "general understanding" that Bojan would "be in line for favorable consideration" if he testified truthfully. He denied that Perry ever indicated that "he would take care" of Bojan in exchange for testimony. Rather, he stated that Perry made clear that in exchange for truthful testimony "he would do what he could to assist us in the future." He conceded writing a letter detailing Bojan's cooperation "deal," but testified that he had only been hoping that the government would acknowledge such a deal. Finally, he expressly denied any

5

agreement, at any time, that the government would seek to reduce Bojan's sentence in exchange for his testimony.

The district court denied Curtis' motion for a mistrial, holding that the evidence clearly established that "there is no deal that was made with reference to Bojan's testimony."

Shortly thereafter, the defense obtained the recordings of the telephone calls between Bojan and McLatchey. Believing that this "newly discovered" evidence demonstrated that there was such a deal, Curtis renewed his motion for a mistrial. He argued that the telephone calls revealed that the government did have a deal with Bojan, the failure to reveal which constituted a *Brady* violation. *Brady v. Maryland*, 373 U.S. 83 (1963). He also asserted that Bojan lied at the trial when he denied that he had such a deal and that the government relied upon this perjured testimony in violation of *Giglio*. *Giglio v. United States*, 405 U.S. 150 (1972).

After a second evidentiary hearing, the district court denied the motion in a written order. The court found that there was no factual basis for Curtis' claims under *Brady* and *Giglio*. First, the court found that the testimony of Bojan, McLatchey, Perry, and Evans specifically denying the existence of a deal between Bojan and the government was credible. The court found that the content of the discussions between Bojan and the government regarding leniency were fully and

6

fairly reported to the defense, including the possibility that the government would consider filing a recommendation for substantial assistance before Bojan's sentencing. Next, the court carefully reviewed the "newly discovered" evidence in the telephone recordings and determined nothing in those calls refuted the direct testimony that there was no deal. In fact, the court found that the calls supported the government's contention that it made no explicit promise to Bojan. Finally, the court found that nothing in the telephone calls established that Bojan perjured himself at Curtis' trial.[3] The court found that the calls supported Bojan's testimony that Curtis did confess to him.

The court then held that there was no legal basis for the *Brady* and *Giglio* claims. There were no violations because the government provided Curtis with the substance of its discussions with Bojan and there was no further "deal" that was kept secret. The court held that the calls revealed that the relationship between Bojan and the government was exactly what was described in the letter from Perry to Curtis' counsel. Furthermore, there was no *Giglio* violation because Bojan did not perjure himself when he testified that he had no specific "deal," and

---

[3] The court conducted an exhaustive survey of these calls, documenting their contents by date of call and concluding that they showed only that Bojan and McLatchey were exploring strategies for dealing with the prosecutor, that McLatchey was trying to give Bojan hope or encouragement, that McLatchey was trying to build himself up in Bojan's eyes, and that Bojan was trying to reassure his mother.

7

the government, therefore, did not argue to the jury based upon perjured testimony.[4]

Additionally, the court held that Curtis' *Brady* and *Giglio* claims must fail because (1) Bojan's testimony was not critical to the prosecution since there was ample other evidence of Curtis' guilt; (2) the allegedly "newly discovered" evidence of the calls would, had it been available at trial, been merely cumulative to the substantial impeachment of Bojan that already had taken place, and (3) Curtis had not shown that this evidence would likely have changed the results of his trial.

On appeal, Curtis asserts that this denial was error because the government failed to disclose the "deal" between it and Bojan, permitted Bojan to falsely testify that there was no deal, and then relied on this perjury in closing argument to the jury.[5]  Curtis argues that there is a reasonable likelihood that the trial outcome would have been different had these events not occurred.

II.

---

[4]  Perhaps most importantly, the calls reveal that Bojan's testimony regarding the Curtis confession was entirely truthful.

[5]  Government counsel argued that "Bojan doesn't have a deal with the government. Bojan's a crook.  You have to be careful of somebody like him.  Look at this testimony very carefully."

This is a case in which the record reveals all. The law is not complicated. The facts are what is in dispute. The essential question is what did the government say to Bojan regarding what it would do in return for his helpful, if not critical, testimony at trial.

In this regard, we find nothing in the record that convinces us that the district court erred in finding credible the direct testimony of the parties involved that there was no explicit deal. Curtis' argument notwithstanding, the mere fact that the government subsequently filed a motion for substantial assistance in Bojan's fraud case does not prove that it had promised to do so.

Furthermore, because of the cloud of suspicion cast upon Bojan's testimony by McLatchey's advice to him to lie about their violation of the rule of sequestration, we undertook to review the record with great care, including the transcripts of *every* recorded telephone call between Bojan and McLatchey. This exhaustive review confirms that the district court correctly concluded that there is nothing in them to override the direct testimony that there was no explicit *deal* between Bojan and the government.[6] Thus, Bojan did not perjure himself when he testified to this effect, and there is no merit to Curtis' *Giglio* claim.

---

[6] Indeed, the recordings confirm that Bojan told the truth about part of his motivation to testify to Curtis' confession – his mother encouraged him.

Having concluded that there was no explicit "deal" between Bojan and the government that the government would be required to divulge under both *Brady* and *Giglio*, we find it unnecessary to decide whether the government was, nevertheless, required to disclose the substance of its conversations with Bojan to Curtis.[7] The fact of the matter is that the government did disclose the contents of its conversations with Bojan in crystal clear detail, and the district judge's finding that the disclosure covered all of the exchange was amply supported by the record. Therefore, there is no merit to Curtis' *Brady* claim.

We pause only to comment on Curtis' argument that his defense was hampered by his ignorance of Bojan's "deal" with the government. We disagree. The fact that Bojan did not have an explicit, quid pro quo deal does not undermine, and may have even enhanced, his motivation to please the government. As the Fourth Circuit said in *Boone v. Paderick*, 541 F.2d 447(4th Cir. 1976):

---

[7] We have held that the use of the word "promise" is not "a word of art that must be specifically employed." *See Brown v. Wainwright*, 785 F.2d 1457, 1464-65 (11th Cir. 1986). "[E]ven mere 'advice' by a prosecutor concerning the future prosecution of a key government witness may fall into the category of discoverable evidence." *Haber v. Wainwright*, 756 F.2d 1520, 1524 (11th Cir. 1985). On the other hand, "not everything said to a witness or to his lawyer must be disclosed." *Tarver v. Hopper*, 169 F.3d 710, 717 (11th Cir. 1999). A promise to "speak a word" on the witness's behalf does not need to be disclosed. *See McCleskey v. Kemp*, 753 F.2d 877, 884 (11th Cir. 1985). Nor does a prosecutor's statement that he would "take care" of the witness need to be disclosed. *See Depree v. Thomas*, 946 F.2d 784, 797-98 (11th Cir. 1991). Some promises, agreements, or understandings do not need to be disclosed, because they are too ambiguous, or too loose or are of too marginal a benefit to the witness to count. *Tarver*, 169 F.3d at 717.

[R]ather than weakening the significance for credibility purposes of an agreement of favorable treatment, tentativeness may increase its relevancy. This is because a promise to recommend leniency (without assurance of it) may be interpreted by the promisee as contingent upon the quality of the evidence produced – the more uncertain the agreement, the greater the incentive to make the testimony pleasing to the promisor.

*Id.* at 451.

We agree. Curtis had all the facts necessary to attack Bojan's testimony as induced by a desire to have his sentence reduced and colored by a desire to please the government. In fact, his testimony was attacked in this way.

### III.

We conclude that the district court's denial of Curtis' motion for a mistrial or new trial was not error as the newly offered evidence does not support Curtis' claim of a *Brady* or *Giglio* violation. Accordingly, his conviction is

AFFIRMED.[8]

---

[8] After oral argument of this appeal, Curtis moved for permission to file a supplemental brief raising a claim under *Blakely v. Washington*, 125 St. Ct. 2531 (2004). We have disposed of that motion by separate order.